WILLIAM H. RICHARDS, in his own right, and as Trustee, &c. *vs.* THE NORTHWEST PROTESTANT DUTCH CHURCH and others.

The right of burial, when confined to a church-yard, as distinguished from a separate independent cemetery, although conveyed with the common formula of "heirs and assigns forever," must, it seems, stand upon the same footing as the right of public worship in a particular pew of the church.

It is an *easement* in, and not a title to the freehold; and must be understood as granted and taken, subject (with compensation, of course,) to such changes as the altered circumstances of the congregation or the neighborhood may render necessary.

Although a deed purports to convey a certain specific piece of ground, and stipulates that it shall "never be dug up, disturbed or destroyed," yet if it describes the premises as belonging to a church corporation, as adjacent to a church edifice, as in a church-yard, and to be used exclusively as a place of interment, and subject to church assessments for regulation and repair, both parties will be held to have considered it as the grant of a mere easement, and not of an ordinary absolute estate in fee.

Like the sale of a church pew, which gives the mere right to worship in the particular place while the church stands and is occupied for religious purposes, the sale of a church vault gives, it seems, the mere right of interment in the particular plat of ground, so long as that and the contiguous ground continues to be occupied as a church-yard.

In case of disturbance the owner may be, and no doubt is, entitled to compensation, but he cannot have an injunction to prevent the disposition of the soil, and the removal of the remains therein deposited, should the court, on application by the officers of the church, deem such disposition proper, and order it accordingly.

THIS was an action to obtain a perpetual injunction against the defendants, to restrain them from removing the remains of the plaintiff's relations from a certain vault owned by the plaintiff, and from destroying the vault. The church was located in Franklin street, in the city of New York, and by the deed for the vault to the plaintiff, it was stipulated in precise terms that the vault should "never be dug up, disturbed or destroyed." The complaint in the action set forth that the officers of the church had agreed to sell the property, including the above vault, and that they had already removed

Richards *v.* The Northwest Protestant Dutch Church.

some of the remains of the plaintiff's relations from the vault, and without his consent or knowledge.

ROOSEVELT, J.   The plaintiffs claim to be vault owners in the church-yard of the Dutch church in Franklin street, lately sold under an order of the court.   They demand that the defendants be compelled to replace the bodies which have been removed to Greenwood, to restore the vault to its original state, and to refrain, under pain of commitment, from any further interference with their rights.

The character and legal attributes of burial property, as distinguished from ordinary absolute ownership in fee, are not perfectly clear.   In the present case a preliminary injunction was at first granted by one of the judges, but on a further, although not final, hearing by the same judge, was dissolved. The remains of the deceased relations had already been removed, and removed, I must say, to a much more suitable, if less legal, resting place, than the heartless bowels of a noisy, bustling, money-making city.   Nothing is left, therefore, now that all the pleadings and proofs are before the court, but to determine the mere dry, legal rights of the parties.   Were it otherwise, however, and could the dead, without rising, speak, a voice, it seems to me, (in the apt quotation of Mr. Justice Mitchell,) would assuredly be heard saying, "Ye shall carry up my bones from hence."

Franklin street, between Church street and West Broadway, has lost every attribute of repose.   Its unfitness for a cemetery its spiritual bodies can see and feel must be as palpable to the dead as to the living ; still the plaintiffs insist that there shall be no removal, and that, as matter of legal right, without their consent there can be none.

In 1817, the corporation of the church, it appears, without any previous order of the chancellor, conveyed a small piece of ground in the church-yard, adjoining the church edifice, to the grantee, "his heirs and assigns, forever," to be used, in the language of the instrument, for the purpose of a burial place,

and for no other purpose whatever. In this plot the grantee, soon after his purchase, constructed a vault, which became the depository, from time to time, of his own remains and those of deceased relatives, till the year 1852, when, on the petition of the corporation of the church, an order was made by this court, authorizing a sale of the church edifice, and of the whole church premises, including the ground in question. A sale was accordingly made, and on report of its terms and conditions, was duly confirmed, and the bodies thereupon, with the approbation of a large majority of the relatives, decorously removed to a suitable burial place, purchased for the purpose, in the cemetery at Greenwood.

Did the sale then, thus authorized and confirmed, divest the title of the representatives of the grantee in the vault which their ancestor had purchased?

The right of burial, it seems to me, when confined to a church-yard, as distinguished from a separate independent cemetery, although conveyed with the common formula of "heirs and assigns forever," must stand upon the same footing as the right of public worship in a particular pew of the consecrated edifice. It is an easement in, and not a title to, the freehold, and must be understood as granted and taken, subject (with compensation, of course,) to such changes as the altered circumstances of the congregation or the neighborhood may render necessary. The selection of a place of burial in the ground, forming the site of a church, we may safely say is always made with reference to its religious associations, and with an eye to their continuance. Suppose the edifice to be destroyed by fire, without the means of rebuilding, (an event not entirely improbable or unprecedented,) must the premises continue an unsightly ruin, with no power any where to meet the emergency? Or must we not rather, from the nature of the contract, and from the character of the subject of its provisions, infer a silent understanding between the parties (quite as operative as if expressed in words at length) that in such case the corporation of the church—in other words, the rep-

resentative body of whom the pew owners, vault owners, and other members of the particular religious associations may be said to be the constituents—should sell the real estate which had become unfit for its original object, and "with the consent and approbation of the chancellor, apply the moneys arising therefrom to such uses as they should conceive to be most for the interest of the society to which the real estate so sold belonged."

Every deed of conveyance, whether for a pew or vault, or a house, is a contract between the parties, to be interpreted according to their actual or fairly to be presumed intent.

The statute—to prevent all doubt on this point—makes it, in terms, the "duty" of all courts of justice, "in the construction of every instrument creating or conveying any interest in land," to carry into effect "the intent of the parties." (1 *R. S.* 748.) This intent—the statute further provides—shall be "collected from the whole instrument," and of course from its scope, object and subject matter, and not from the mere letter of a particular sentence. Although, therefore, the deed in question purports to carry a certain specific piece of ground, twelve feet by twenty, we must bear in mind that it describes the premises as belonging to a church corporation, as adjacent to a church edifice, as in a church-yard, and to be used exclusively as a place of interment, and subject to church assessments for regulation and repair. In this view, both parties, it seems to me, the one in executing, the other in accepting the conveyance, must have considered it as the grant of a mere easement, and not of an ordinary absolute estate in fee. And hence no order of the chancellor was applied for, and in that view none was required. Although such order, in all cases of church property, is indispensable to an absolute conveyance of the soil.

Like the sale of a church pew, which gives the mere right to worship in the particular place while the church stands, and is occupied for religious purposes, the sale of a church vault gives, it would seem, the mere right of interment in the

particular plot of ground, so long as that and the contiguous ground continues to be occupied as a church-yard. The owner of the easement may be, in case of disturbance, and no doubt is, entitled to a reasonable compensation or equivalent, but he cannot interpose a veto to the disposition of the soil, should the court, as was actually the case in this instance, on application of the legitimate church officers, deem such disposition proper, and order it accordingly.

Every person purchasing either a pew in a church edifice, or a grave in a church-yard, appendant to a church, does so with the full knowledge and implied understanding that change of circumstances may, in time, require a change of location ; and that the law, (a positive statute which has been in existence nearly half a century,) looking to such exigency, authorizes the corporation, when it arrives, as the representative of all interests, with the sanction of the court, to sell the soil in absolute fee, discharged of all easements, and to make some other more appropriate investment or disposition of the proceeds.

Counsel have cited several authorities in support of their respective positions. They all concede that such rights, however strongly conveyed, are divested by a regular sale of the church edifice. Those relating to vault rights are discordant and neutralize each other. Vice Chancellor McCoun, in the Brick Church case, held one way, and Mr. Justice Edwards, in that of another church, held the opposite. (*See* 3 *Edw. Ch. Rep.* 155, *and* 8 *Barb.* 130.)

The reasoning, which leads to the result arrived at in the case of church pews, is applicable, as it seems to me, in a great degree to the case of church vaults. It proceeds upon the assumption — a necessary assumption — that church grants in such cases are made upon the implied condition, that the land shall be subject to the right of what may be called eminent domain — that is, subject to the right of resumption whenever the public use, or a change of circumstances may, in the judgment of the church and of the court, require the exercise of such right, but subject also to the duty of making

Dwight *v.* Webster.

a just and fair compensation, in the form of money or other suitable equivalent, if required.

As the complaint in this case only calls in question the validity of the sale, and is not adapted to a claim for compensation, it must be dismissed with costs.

[NEW YORK SPECIAL TERM, December 5, 1859. *Roosevelt*, Justice.]