James R. Partridge and Francis E. Partridge, and others, *vs.* The First Independent Church of Baltimore.

*Nature and extent of the Interest of Lotholders in a Cemetery.*

The First Independent Church of Baltimore purchased a lot of ground in fee for a cemetery, and it was used for such purpose. To those purchasing the right of burial therein, a certificate was issued, whereby it was certified that the party to whom it was issued was the proprietor of a certain designated lot in the cemetery of the First Independent Church of Baltimore, and that such lot was granted and conveyed by the Church to the party, his heirs and assigns forever; subject to the regulations of the trustees of the Church. This certificate was neither under seal, nor acknowledged nor recorded; but was simply signed by the chairman of the trustees and attested by the register. Held :

That this certificate did not confer upon the holder any title or estate in the soil; and not being under seal, nor acknowledged and recorded, it did not operate as a grant of an easement; it conferred only a privilege or license to make interments in the lot described, exclusively of others, as long as the ground remained a burying ground or cemetery. Whenever, therefore, by lawful authority, the ground ceased to be a place of burial, the lotholder's right and privilege ceased, except for the purpose of removing the remains previously buried.

Where a cemetery having become unsuitable for such purpose, is sold at the instance of the Church corporation under a decree in Equity, passed in pursuance of the Act of 1868, ch. 211, a lotholder, who has removed the dead buried in his lot and placed them elsewhere, is not entitled to compensation or re-imbursement, out of the proceeds of sale of the cemetery, for the improvements or erections which he had placed on his lot; the most that he could claim to receive would be the price which he paid for the burial license.

All monuments and erections capable of being removed, placed on the burial lots in a cemetery, under a license to bury therein, like the one in this case, would be regarded as the personal property of the lotholder; and he would have the right to remove the same, upon the lot ceasing to be used for the purposes of burial.

APPEAL from the Circuit Court of Baltimore City.

In the year 1821, the appellee purchased in fee a parcel of land for a burial ground, and it was used for many years for that purpose. The late Eaton R. Partridge, in his life-time, paid to the appellee the sum of $25 for a lot in said burial ground, and obtained a certificate therefor, in the form issued to lot-holders by the appellee, which was neither sealed, acknowledged nor recorded. The following is a blank form of the certificate issued to lot-holders in the burial ground:

No. —.     THE FIRST INDEPENDENT CHURCH OF BALTIMORE.

No. ——.

This certifies, that —— ——, the proprietor of Lot Number ——, in the Cemetery of the First Independent Church of Baltimore. Which lot is hereby granted and conveyed by said Church unto the said ——, heirs and assigns, forever ; subject to the regulations of the trustees.

Dated at Baltimore, this — day of ——, 18—.

—— ——, Chairman of the Trustees.

—— ——-, Register.

The said Partridge, having obtained said certificate, caused to be constructed on said lot a vault, at a cost, as alleged, of some $1800 ; and in the course of time different members of his family were buried therein. The burial ground having ceased to be suitable for such purpose, the appellee, in July, 1871, filed its bill in the Circuit Court of Baltimore City, against Leonard J. Wyeth and others, for a sale thereof, under the Act of 1868, ch. 211, and a decree was passed on the 23rd of January, 1872, appointing trustees to sell said burial ground. In this decree it was provided, that "before proceeding to make such sale, the said trustees shall be satisfied, and they shall so state on oath in their report of sale, that the remains of all persons interred in said

ground, as far as it be possible to ascertain them, have been decently removed and re-interred elsewhere; and it is hereby ordered that such removal and re-interment shall be made at the proper cost and expense of the complainant, except in cases where parties interested may desire the same to be done under their own direction and at a greater cost than that for which it could be decently done by the complainant, in which case the difference in the cost growing out of such desire shall be borne by the person or persons desiring the same to be done.'' The duties thus imposed on the trustees were carefully performed. Months before the filing of the bill by the appellee, the appellants removed from their lot the remains of their dead interred therein: but the empty vault was not removed, and at the time of the sale of the cemetery, was expressly reserved by the trustees, with the right to the appellants to remove the same from the premises. The appellee was ready and willing to pay to the appellants the sum paid by them for their lot. The auditor having stated an account, awarding to the appellee the net proceeds of the sale of the burial ground, the appellants filed a petition asking that the proceedings be referred back to the auditor with instructions to allow the petitioners such sum as would enable them to construct elsewhere a vault similar to the one which they had built in the cemetery of the appellee. It was agreed that this petition should be taken as if it had been filed before the auditor's report and account were finally ratified. The Court, after hearing, passed an order dismissing the petition; from this order the present appeal was taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*George C. Maund,* for the appellants.

An examination of the case of *Kincaid's Appeal,* 66 *Penn. St.,* 420, which the Court below adopted as decisive

of this case, will show that the principles therein decided, do not so much as touch the question raised by this appeal.

Kincaid's appeal was the case of an application for an injunction to prohibit the sale of a burial ground in which the petitioners for the injunction *denied* the very thing which the petitioners in this case *admit,* to wit: the right of the church to make sale of the burial ground; so that the right of a lot-holder to compensation out of the proceeds of sale (the only question in this case) was not considered at all in Kincaid's appeal. And it will be found that any incidental allusion by the Court in that case to the question of a right to compensation, favors, rather than otherwise, the claim of the petitioners in this case. The right to indemnity or compensation is expressly recognized as existing, in certain circumstances. See *Cooper vs. First Presbyterian Church,* 32 *Barb.*, 227–230 ; *Daniel vs. Wood, et al.,* 1 *Pick.*, 102 ; *Gay vs. Baker,* 17 *Mass.*, 435 : *Washburn on Easements,* 515.

But any objections, founded upon the general principles of law, which could be urged against the claim of these petitioners have been removed by the distinct provisions of the Act of 1868, ch. 211, under which the proceedings for the sale of the burial ground, in this case, were instituted.

That Act provides, by its first section, "that upon any bill being filed for the sale of any ground dedicated and used for the purpose of burial, in which lots have been sold and deeds executed, *or certificates issued* to the purchasers of such lots," the Court may under the circumstances therein stated, "forthwith pass a decree for the sale of the same upon such terms as it shall deem proper, and *shall distribute the proceeds of sale among the parties interested* according to their several interests, as the same shall be shown to the Court." This statutory language fully sustains the claim of the appellants.

*Frederick J. Brown* and *Arthur Geo. Brown,* for the appellee.

A right of burial is simply an easement in, not a title to, a freehold, where the general property in the land belongs to a religious society—even in cases where such title is acquired by a formal deed. *Howard vs. First Parish in North Bridgewater,* 7 *Pick.,* 138; *Washburn on Ease. & Serv.,* 515; *Richards vs. The Northwest Protestant Dutch Ch.,* 32 *Barb.,* 42; *Wentworth vs. First Parish in Canton,* 3 *Pick.,* 346.

When such an inevitable disturbing cause as the growth of a city renders such a burial ground unfit for the purpose for which it was intended, and public health or convenience requires the removal of its dead, the lot-holders are not entitled to share in the proceeds of sale, for the same reason that they could not be called on to contribute towards any loss that might be suffered by the corporation owning it, in consequence of a depreciation from any cause in the value of the land or a loss from its sale. *Kincaid's Appeal,* 66 *Penn.,* 420; *Windt vs. German Reformed Ch.,* 4 *Sandf. Ch.,* 471.

In no event could a lot-holder be entitled to receive out of the proceeds of sale more than the sum originally paid by him. If, besides, he must be paid the cost of any monument which he may have erected to gratify his own taste or vanity, one rich man might easily render impossible the sale of any cemetery. Thus the contract made with a poor lot-holder who could afford no monument would be very different from that made in consideration of the payment of the same sum of money by a rich man, and a single individual might stop the growth and ruin the health of a city.

Eaton R. Partridge having chosen to run the risk of spending a large sum of money in building a costly structure on ground in which he had merely an easement, the appellants, now that public necessity has deprived them

of the use of that easement, have no right to demand from the appellee payment for a structure, the erection of which it did not invite, and with the use of which it has done nothing voluntarily to interfere.

ALVEY, J., delivered the opinion of the Court.

It being conceded that the proceedings for the sale of the burial ground or cemetery of the First Independent Church of Baltimore, were under the Act of 1868, chapter 211, and were in all respects regular, and in conformity to the requirement of that Act, the only questions arising on this appeal are : 1st, as to the nature and extent of the interest of the lot-holders; and, 2nd, whether, and to what extent they are entitled to distribution of the proceeds of sale, for and in respect to improvements placed on the lots.

1. In determining the first of these questions, we must look to the muniments of title. The ground, the proceeds of the sale of which are now in question, was conveyed to the First Independent Church of Baltimore, by Robert Oliver, by deed dated the 22nd of August, 1821. By this deed the ground was conveyed in fee, and without any declaration of use or trust whatever. It would appear, however, that the church corporation dedicated the ground thus acquired to the purposes of burial of the dead, and we may suppose that the ground was purchased for that purpose alone; and to those purchasing the right of burial therein, a certificate was issued, whereby it was certified that the party to whom it was issued was the proprietor of a certain designated lot in the Cemetery of the First Independent Church of Baltimore, and that such lot was granted and conveyed by the church to the party, his heirs and assigns, forever; subject to the regulations of the trustees of the church. This certificate was neither under the seal of the corporation, nor acknowledged, nor recorded; but was simply signed by the chairman of the trustees, and attested by the register.

What right or interest did this certificate confer upon its holder?

We think it clear that it conferred no title or estate in the soil ; nor could it operate as a grant of an easement, because it was not under seal, nor was it acknowledged and recorded, so as to be effective to convey such an interest. *Hays vs. Richardson,* 1 *Gill & Johns.*, 336.   The right to an easement must be founded upon a grant by deed, or upon prescription, for it is a permanent interest in another's land, with a right of enjoyment; whereas a mere license is but an authority to do a particular act, or series of acts, upon another's land, without possessing any estate therein.   3 *Kent Com.*, 452.   At most, then, the certificate, such as we have here, conferred only a privilege or license to make interments in the lot described exclusively of others, as long as the ground remained a burying ground or cemetery.   Whenever, therefore, by lawful authority, the ground ceased to be a place of burial, the lot-holder's right and privilege ceased, except for the purpose of removing the remains previously buried.   This is the principle announced in *Kincaid's Appeal*, 66 *Penn. St.*, 411, in reference to a certificate like the one before us, and we can have no doubt of its correctness.   In that case, the Court, in speaking of the right conferred by the certificate, said :  " The lot-holder purchased a license—nothing more—irrevocable as long as the place continued a burying ground, but giving no title to the soil.   Whether it was an incorporeal hereditament descendible to him, or passed on his death to his personal representative, it is unnecessary to decide.   While the license continued he could, perhaps, bring trespass or case for any invasion or disturbance of it, whether by the grantors or by strangers. But if in the course of time it should become necessary to vacate the ground as a burying ground, all that he could claim, in law or equity, would be that he should have due notice and the opportunity afforded to him of removing

the bodies and monuments to some other place of his own selection, or that, on his failing to do so, such removal should be made by others. He accepted the grant or license subject to this necessary condition.'' To the same effect are the cases of *Windt vs. The German Reform Church,* 4 *Sandf. Ch. Rep.,* 471, and *Richards vs. The Northwest Protestant Dutch Church,* 32 *Barb.,* 42.

2. Such then being the nature of the right acquired by virtue of the certificate, the next question is, whether the lot-holder is entitled to compensation or reimbursement, out of the proceeds of sale of the burying ground, for improvements or erections placed on his lot?

By the decree of sale, the trustees were required, before making the sale, to be satisfied that all the bodies interred in the ground had been decently removed and reinterred elsewhere, at the cost and expense of the church corporation, except in those cases where parties concerned preferred to have their dead removed under their own direction, and at such cost as they might think proper to incur. This preliminary condition, of having all the bodies removed and reinterred, we take it for granted, was duly performed. And it would appear, that, before the bill was filed for the sale of the ground, the appellants had removed their dead and placed them elsewhere; and that, in making the sale, the vault constructed by the father of some of the appellants, at a cost of about $1800, was expressly excepted and reserved by the trustees, for the benefit and protection of the appellants, with the right to remove the same. It is in respect to this vault that the claim is now made. The appellants, by their petition, pray that out of the proceeds of the sale of the burying ground, they may be allowed such sum as will enable them to construct elsewhere a vault similar to the one constructed on the ground sold.

We are not aware of any principle upon which this claim can be allowed. There can be no application to

this case of the principle upon which beneficial improvements are allowed for; nor is the nature of the privilege, evidenced by the certificate, such as to entitle the holder to any distributive proportion of the proceeds of the sale of the estate itself. The most that the lot-holders could claim to receive is the price paid by them for the license. If their interest was in the estate, then they would be entitled to distribution according to that interest; but as they had no interest in the estate, and only an authority to do certain acts on the land, they can claim no part of the proceeds of sale, as being the equivalent of any interest therein. And when the Act of 1868, chapter 211, directs that the proceeds of sale shall be distributed "among the parties interested according to their several interests, as the same shall be shown to the Court," it is meant such interest in the land sold as would be represented by a fair and just proportion of the proceeds of sale.

If this cemetery had been sold simply from motives of gain or convenience to the church corporation, and against the consent of the lot-holders, then, perhaps, the right to compensation for all reasonable outlay for improvement and adornment of the burial lots could have been asserted; but, by the Act under which the sale in this case was made, it was a condition upon which the decree could pass, *that it was necessary*, and would be for the interest and advantage of the parties interested, that the ground should be sold. These conditions, it is conceded by the appellants, were shown to exist. It was not, therefore, a mere matter of gain or caprice on the part of the church corporation that the ground was sold.

All monuments and erections capable of being removed, placed on the burial lots under a license like the present, would be regarded as the personal property of the lot-holder; and he would have the right to remove the same, upon the lot ceasing to be used for the purposes of burial.

This would seem to be a well established principle. *Barnes vs. Barnes,* 6 *Vt.,* 388; *Ashman vs. Williams,* 8 *Pick.,* 402; *Prince vs. Case,* 10 *Conn.,* 375. To the assertion of this right the lot-holders must resort, instead of claiming compensation for the cost of the erection or improvement. The decree appealed from will be affirmed, but without costs.

*Decree affirmed.*

(Decided 3rd March, 1874.)