Robert Went, Respondent, *v.* The Methodist Protestant Church of Williamsburgh, Kings County, and Another, Appellants.

*Cemetery — power of the Legislature to prohibit interments — removal of the dead — act authorizing the sale of cemetery lands — title to a cemetery lot — no right of a pew owner to compensation on the taking down of the church — chapter 352 of 1893.*

The Legislature has power to prohibit interments in, or to remove the dead from, cemeteries which, in view of the advance of urban population, may be detrimental to the public health or are in danger of becoming so.

The validity of an act authorizing a sale of cemetery lands, when challenged by an individual lot owner, depends upon the character of the title which the latter has to his burial plot.

The Legislature, in directing the removal of the dead, must provide for the expenses of such removal, and while it may impose that expense upon the lots from which bodies are removed, or upon the owners of the lots, it must proceed by lawful methods.

If the lot owner has title to the land, he cannot be deprived of his property without his consent, and a direction by the Legislature to the corporation or association having general charge of the cemetery to sell and convey it, would have no valid force or effect.

The question as to the title of a lot owner in a cemetery to his lot therein cannot be determined solely by the terms of the deed thereof; reference must be had to the act of the Legislature creating the corporation, from which the title is derived, and to the limitations upon its power, and to the manifest intent of the parties to the instrument.

·Every owner of a cemetery lot must be deemed to have purchased and to hold it for the sole purpose of using it as a place of burial, and he is bound to know at his peril that it may become offensive by reason of the residence of many people in its vicinity, and that such use must yield to laws for the suppression of nuisances.

Every lot owner holds his title subject to that contingency, and no condition or covenants contained in deeds appropriating the lands to particular uses can prevent the Legislature from declaring such use unlawful and compelling the removal of all bodies from the ground.

Chapter 352 of the Laws of 1893 is a valid exercise of legislative power, and the action of The Methodist Protestant Church of Williamsburgh, Kings county, and the Union Cemetery thereunder cannot be restrained.

*Semble*, that a pew owner has no claim for compensation when the church is taken down from necessity, arising from the condition of the building or other imperative exigency; and it cannot be said that in such a case his property is taken for a public use.

· APPEAL by the defendants, The Methodist Protestant Church of Williamsburgh, Kings county, and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 13th day of February, 1894, upon the decision of the court rendered after a trial at the Kings County Special Term, restraining the defendants from selling Union Cemetery, or in any manner interfering with or using said cemetery except for cemetery purposes.

In the year 1851 the Methodist Protestant Church of Williamsburgh and the Methodist Protestant Church of New York purchased from Margaret Duryea a plot of ground now in the city of Brook-

lyn and comprising about three city blocks, to be used as a burial ground.

By chapter 196, Laws of 1853, a corporation to be known as " Union Cemetery" was created, and the trustees of said two church corporations were made a joint board of trustees of said cemetery corporation. It was enacted that the aforesaid lands should be deemed and taken as a rural cemetery within the meaning of the act for the incorporation of rural cemetery associations, passed April 27, 1847, and should possess all the rights, immunities, privileges and franchises set forth and granted by the terms of said last-mentioned act, with certain exceptions not material to this case.

By chapter 308, Laws of 1878, supplemental to the act of 1853, it was further provided that said land should " be and continue a rural cemetery forever, subject to all laws relating to rural cemeteries as modified and limited by the act to which this is an addition."

Provision was therein made by which either of said two church corporations might release to the other its interest in said lands, and upon the execution of such release the trustees of the corporation to whom the same was executed were to become vested with the entire property and franchises of Union Cemetery and subject to the duties and obligations charged on the joint board. Pursuant to this act the Methodist Protestant Church of New York released all its interest in said lands to the Williamsburgh church. The lands were subdivided into burial lots and sold to many persons, and the deeds given for such lots were in form full covenant warranty deeds, purporting to convey title to the land. Many thousand bodies have been interred in the cemetery. There are no further lots for sale and no place for reinterments if any bodies are removed.

The part of the city in which said cemetery is situated is rapidly increasing in population; streets and avenues have been laid out through the said lands, and proceedings for the opening of the same instituted by the common council of the city. By chapter 352, Laws of 1893, the Legislature prohibited further interments therein, and authorized the appellant church to remove or cause to be removed all bodies buried and now remaining in said cemetery, with all monuments, headstones, etc., to some other cemetery to be procured by purchase, and to sell Union Cemetery at public or private sale, and apply so much of the proceeds as might be necessary to

the purchase of the new cemetery and the expenses of the removal of the bodies.

The plaintiff is the owner of a lot in said cemetery in which interments have been made, and brings this action to restrain the defendants from selling said land or using the same for any except cemetery purposes.

The court found that the cemetery had never been adjudged to be a nuisance, but that its location and condition and present surroundings rendered its removal advisable, and that the act of 1893, so far as it authorized a sale thereof without providing for compensation to the plaintiff and other lot owners, was in violation of the Constitution of the State.

Further material facts appear in the opinion.

*William Erdman* and *Job E. Hedges* for the appellants.

*W. S. Lewis* and *H. F. Lawrence,* for the respondent.

BROWN, P. J. :

The power of the Legislature to prohibit interments in or to remove the dead from cemeteries which in the advance of urban population may be detrimental to the public health or in danger of becoming so, is not at this day a debatable question. ( *Windt* v. *German Ref. Church,* 4 Sandf. Ch. 471 ; *Richards* v. *The N. W. Prot. Dutch Church,* 32 Barb. 42 ; *Brick Church* v. *The Mayor,* 5 Cow. 538 ; *Coates* v. *The Mayor,* 7 id. 585 ; *Sohier* v. *Trinity Church,* 109 Mass. 1 ; *Woodlawn Cemetery* v. *Everett,* 118 id. 354 ; *Kincaid's Appeal,* 66 Penn. St. 411 ; *Craig* v. *First Presb. Church,* 88 id. 42 ; Tiedeman on Police Power, § 122d ; Dillon on Mun. Corp. §§ 306, 307.)

In *Kincaid's Appeal* the Supreme Court of Pennsylvania said that no one can doubt the power of the Legislature to prohibit all further interments within the limits of towns and cities, and as the constitutionality of that exercise of legislative power was unquestioned, it was not doubted that the Legislature could proceed a step further and declare that burying grounds should be vacated as such and direct the removal of the bodies therefrom. The plaintiff does not seriously question the existence of this legislative power, but it is apparent that in this instance, unless the defendants can sell the

cemetery lands, the direction for the removal and reinterment of the bodies cannot be carried out. The validity of an act authorizing a sale of cemetery lands, when challenged by the individual lot owner, depends upon the character of the title which the latter has to his burial plot. While it is apparent that the Legislature, in directing the removal of the dead, must provide for the expenses, and while I have no doubt that it may impose that expense upon the lots from which bodies are removed, or upon the owner thereof, it must proceed by lawful methods, and if the lot owner has a title to the land he cannot be deprived of his property without his consent, and a direction by the Legislature to the corporation or association having general charge of the cemetery to sell and convey it would have no valid force or effect.

The constitutional provision in relation to making compensation for property taken for a public use does not seem to me to have any application to the question. The abatement of the nuisance arising from the burial of great numbers of dead bodies in a thickly populated district is the question which concerns the public and the one over which the Legislature has power, and that is satisfied by a removal of the bodies. No property is taken for public use, unless it can be said to be taken for the purpose of acquiring new burying grounds and to pay the expense of removal. But to take it for that purpose would be in the nature of a tax or assessment, to impose or enforce which the Legislature should provide regular proceedings, in which the lot owners should have opportunity to be heard. The Legislature, in directing a sale of the land in question, has assumed that the church corporation had the title. If that is not the fact, then the power of sale cannot be executed. The reported cases are not harmonious upon the question as to the character of the title which a lot owner has to a burial plot in a cemetery controlled and governed by a corporation.

The courts have differed as to whether it is an easement analogous to that of a pew owner in a church, or whether it is an ownership in the soil.

Mr. Washburn, in his work on Easements (p. 515), states the rule as follows: "Right of burial in churchyards and pew rights in churches, although acquired by deed of a particular lot or pew, are only easements in land belonging to the society which governs the

church or churchyard.   It is an easement in, and not a title to, the freehold, and is to be understood as granted and taken, subject, with compensation, of course, to such changes as the altered circumstances of the congregation or the neighborhood may render necessary."

To the same effect are : *Kincaid's Appeal* (66 Penn. St. 411–423) ; *Craig* v. *First Presb. Ch.* (88 id. 42) ; *Sohier* v. *Trinity Church* (109 Mass. 1–21) ; *Price* v. *Meth. Church* (4 Ohio, 515) ; *Richards* v. *N. W. Dutch Ch.* (32 Barb. 42) ; *Buffalo City Cem.* v. *City of Buffalo* (46 N. Y. 503).

To the contrary are : *In re Brick Presb. Ch.* (3 Edw. Ch. 155) ; *Windt* v. *German Rfd. Ch.* (4 Sandf. Ch. 471).

In the case of the *Brick Church* the deed to the lot owner was in form similar to that held by the plaintiff.   The vice-chancellor, after a review of many authorities and distinguishing the case from that of a pew holder or owner of a tomb, held that the deed gave to the lot owner title to the land and not a mere easement or privilege of burial.

In the case of the *German Rfd. Ch.* the plaintiff had no deed, and an injunction to restrain the sale of the land was refused, but Vice-Chancellor SANDFORD expressed the opinion that the result would have been otherwise if the plaintiff had held a deed for his plot.

These cases cannot, I think, be reconciled with the case of the *N. W. Prot. Dutch Church* (32 Barb. 42).   There the plaintiff held title to his lot by deed — which granted to him, " his heirs and assigns forever," and stipulated that the vault should " never be dug up, disturbed or destroyed."   An injunction restraining a sale by the church was denied.

In *Kincaid's* case the evidence of title was a certificate under seal of the church that the lot owner was entitled to two lots of a certain size and number to hold for the uses and purposes mentioned in the deed of trust to the church.

In the case of *Trinity Church of Boston* the tombs were constructed under the church edifice, but the plaintiffs held title by deed.

The question of title cannot be determined solely by the terms of the deed given to the lot owner.   Reference must of course be had to the act of the Legislature creating the corporation from which title is derived and to the limitations upon its power and to the

manifest intent of the parties to the instrument. Every owner of a cemetery lot must be deemed to have purchased and to hold it for the sole purpose of using it as a place of burial, and, as was said in *Kincaid's* case, he is bound to know at his peril that it may become offensive by the residence of many people in its vicinity and that its use must yield to laws for the suppression of nuisances. Every cemetery within or near large cities must give way to the advance of population. Interments ultimately must cease and the remains of the dead that are capable of removal must be reintered in new grounds. Every lot owner holds his title subject to that contingency, and no condition or covenants contained in deeds appropriating the lands to particular uses can prevent the Legislature from declaring such use unlawful and compelling the removal of all b dies from the grounds.

All individual rights of property, whether they rest on absolute conveyances or mere license, are subject to laws of this character, and the principle known as the police power, upon which the legislative authority to enact such laws rests, has of late years been considered by the courts in numerous cases — many of which are on the briefs of counsel.

Assuming, therefore, as we must, that the use of the cemetery as a burial place may be interdicted, and the bodies of the dead removed, it cannot, I think, be seriously claimed that it was within the contemplation of parties to a deed for a burial plot, that when that contingency should arise the individual owner should hold title to his lot for general uses the same as he would hold other property. Individual ownership under such circumstances, would only create confusion of title and eventually leave a large tract of land without the care or supervision of a responsible owner. The lots would be small and of no use for building purposes, inaccessible in many instances from the city streets, and where the original grantee had died, probably owned by many persons having widely separated residences and in many instances unknown.

A construction should not, therefore, be put upon deeds of this character that would produce such a result, unless the rules of law applicable to such instruments forbid any other conclusion. By the Laws of 1853 and 1878, relating to the incorporation of Union Cemetery, it was enacted that it should be a rural cemetery within

the meaning of the act for the incorporation of rural cemetery asso-
ciations, and it was made subject to the restrictions and given the
rights and franchises of such associations. An examination of the
act of 1847, authorizing the incorporation of such associations, and
the amendments thereto, shows that it was the intention of the Legis-
lature that the title to the land should remain in the association and
that the lot owner should hold only an easement for the purpose of
burial. The power reserved to the association by sections 8, 9 and
10 are powers that belong to the owner of the fee.

It may sue for trespass committed on the lots conveyed to indi-
viduals, and it may enter upon the lots at any time to improve or
embellish them or to erect buildings, fences, walks, etc. The lots
are exempt from taxation as property of the association. The pro-
visions of section 11, to which our attention is called, that a lot in
which an interment has been made is forever thereafter inalienable,
is not a limitation upon the power of the Legislature to order a sale
of the property.

The case of *The Deansville Cemetery Association* (66 N. Y. 569),
cited in the opinion of the Special Term and relied upon by the
respondent, does not decide anything contrary to the views here
expressed. That was an application to condemn lands for cemetery
purposes, and the court decided that the act of the Legislature purport-
ing to grant that power was unconstitutional on the ground that the
use for which the land was to be taken was private and not public.
Nothing in the opinion can be construed as holding that the indi-
vidual owner held title to the soil of his burial lot. It was said that
their "rights" descended to their heirs as private property and
that the substantial right of enjoyment of the property was vested
in individual lot owners. But this language is as applicable to an
easement as to an ownership of the soil.

The question of title was, however, presented in the case of *The
Buffalo Cemetery* v. *City of Buffalo* (46 N. Y. 503).

In that case the association, which was organized under the Rural
Cemetery Act, sought to have an assessment set aside on the ground
that it should have been made against the individual lot owner.
This claim was overruled and the assessment sustained, Judge FOLGER
saying that "the effect of such conveyance under the statute * * *

(was) to confer upon the holder of a lot a right to use for the purpose of interment." "No such estate is," he said, "granted as makes him an owner in such sense as to exclude the general proprietorship of the association. The association remains the owner in general, and holds that relation to the public and to the government; while subject to this the individual has a right, exclusive of any other person, to bury upon the subdivided plat assigned to him. He holds a position analogous to that of a pew holder in a house for public worship."

This case, in my judgment, is conclusive as to the plaintiff's title. It is true that there was no conveyance before the court in that case, and that the plaintiff's deed is sufficient to convey a freehold; but, construing the latter conveyance in the light of the statute authorizing the creation of rural cemetery associations, as interpreted by the Court of Appeals, and the evident purpose of the parties to the contract, it cannot, I think, be truly claimed that the plaintiff purchased more than an easement for burial purposes, or that the grant was intended to convey a fee. The intent of the contract is carried out and the purpose of the parties thereto effectuated by holding that the legal effect of the instrument was to grant an easement in the land only.

To this construction of the plaintiff's deed the case of *The Brick Church* (3 Edw. Ch. 155) does not apply. It is settled by a long line of authorities that a pew owner has no claim for compensation when the church is taken down from necessity arising from the condition of the building or other imperative exigency.

It cannot be said, in any sense, that in such case his property is taken for public use. (*Kincaid's Appeal, supra,* and cases cited in opinion of Judge SHARSWOOD.)

In this case the plaintiff's rights are fully protected by the direction to the defendants to remove the bodies to a new cemetery, and to purchase other land to be used for cemetery purposes. The rights of burial which he loses in the old ground will be fully restored to him in the new, and in legal contemplation he suffers no damages.

My conclusion is that the act of 1893 was a valid exercise of legislative power, and the action of defendants thereunder cannot be restrained.

The judgment must, therefore, be reversed, and, as a new trial would be of no avail to the plaintiff, the complaint is dismissed, with costs.

DYKMAN and CULLEN, JJ., concurred.

Judgment reversed and complaint dismissed, with costs.