### DUTTON v. GREENWOOD CEMETERY CO.

(Supreme Court, Appellate Division, Second Department.  March 6, 1903.)

1. CEMETERIES—PUBLIC BURIAL LOTS—GRAVESTONES—MAINTENANCE—INJURIES TO PEDESTRIANS.

   A cemetery company set apart a "public lot" in its cemetery in which it conveyed by deed to plaintiff and others the privilege of interment. The only access to graves in such lot was by a path between the grave mounds; and while plaintiff, with his wife and child, was visiting the grave of his deceased child, a gravestone erected in the lot fell on plaintiff's child and injured her. The stone had been improperly erected, and the foreman of the cemetery testified that it was his duty to keep the stones in such lot lined up. *Held*, that the company was bound, to the exercise of ordinary care, to prevent the gravestones from falling, and was liable for the injury if by the exercise of such care it could have discovered and remedied the defect.

   Jenks, J., dissenting.

Appeal from municipal court of New York.

Action by Samuel Dutton against the Greenwood Cemetery Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Edmund L. Baylies (Langdon P. Merwin, on the brief), for appellant.

Charles C. Clark, for respondent.

HIRSCHBERG, J.  The plaintiff has recovered a small judgment for personal injuries sustained by his minor child by reason of the falling of a tombstone upon her in defendant's cemetery. The plaintiff, with his wife and three children, were visiting the cemetery on the

day of the accident, May 30, 1899; the plaintiff's purpose being to
decorate the grave of a buried child. The children were then seven
years, two years and eight months, and three months old, respectively.
The plaintiff's plot and the one from which the tombstone fell are
side by side, and both are in a large "public lot," as it is called by the
defendant. In this particular public lot there are more than 500
graves, and about 100 tombstones. Persons having occasion to visit
this portion of the grounds are accustomed to walk between the
graves, as the only means of access to their own plats or subdivisions.
No title to the property is conferred by the defendant by deed, but a
privilege of interment, only, is given, evidenced by a receipt or inter-
ment card.

On the day in question the plaintiff and his family reached the
grave by walking upon what is referred to as a well-defined, beaten
pathway, made by use, and extending from Orchard avenue to and
beyond the place of the accident. Its width is stated at from 12 to
21 inches. It is merely the sod between the grave mounds, tramped
into a pathway. After the plaintiff had planted flowers and weeded
and cleared up the grave, picking up bits of paper, etc., to carry and
throw away, the party started to retrace their steps. The girl who
was injured was the two years and eight months old child, and she
was walking just ahead of her mother, the latter carrying the baby;
and as the little girl was passing between the graves the tombstone
fell upon her, breaking her leg.

It cannot be doubted that the defendant owes some duty of care
to those who are lawfully on the premises to see to it that they
are reasonably safe, in so far as ordinary diligence will accomplish
that result. The learned counsel for the defendant conceded on the
trial that, if any liability existed, it attached to the defendant, but he
insisted that express knowledge of the dangerous condition must first
be acquired, before the defendant can be held to be under any obliga-
tion to act. There is, however, nothing in the situation to remove
the case from the operation of the general rules governing construc-
tive notice. The defendant is the absolute owner of the property, and
in full possession and control of it; those to whom receipts for lots
have been given having no estate or interest in the land as such, but
merely a right to its use for burial purposes, subject to the rules,
regulations, and general control of the defendant. People ex rel.
Coppers v. Trustees, 21 Hun, 184; Went v. Methodist Protestant
Church, 80 Hun, 266, 30 N. Y. Supp. 157; Buffalo City Cemetery
v. City of Buffalo, 46 N. Y. 503. Even where a deed had been given
to a lot owner, in the case last cited, Judge Folger said (page 505):

"The effect of such conveyance, under the statute from which the plain-
tiff derives its powers, is, we suppose (for no copy of any conveyance is
laid before us), no more than to confer upon the holder of a lot a right to
use for the purpose of interments. No such estate is granted as makes him
an owner in such sense as to exclude the general proprietorship of the
association. The association remains the owner in general. and holds that
relation to the public and to the government, while, subject to this, the
individual has a right, exclusive of any other person, to bury upon the
subdivided plat assigned to him. He holds a position analogous to that
of a pew holder in a house for public worship. It is a right exclusive of

any other of the congregation, but subject to the right of the religious corporation which represents the ownership of the property to the public, and is the legal owner of the fee of the property."

The defendant has apparently always assumed the duty of exercising the care incident to ownership. Its foreman testified that, in the locality in question, his instructions from the defendant were to cut the grass; keep the paths, mounds, and gravestones in good order; to keep the latter straight in line; and to straighten them when, as occasionally happens, they are found leaning, from the effects of storms or otherwise. There was, however, no regular inspection of the monuments, either when they were originally set up or afterwards, for the purpose of ascertaining whether they were in safe condition, although accidents similar to this one were not uncommon. The foreman testified on direct and on cross examination, on the subject of his instructions, as follows:

"Q. What orders have you about keeping headstones on public lots in order? A. Try to keep them straight in a line—just keep them lined up. Sometimes they might be leaning a little back, if there is a storm. I try to keep them upright and straight—straight in a line. That is all. * * * Q. You say your instructions are to see that these base stones are in line and up in order? A. Yes; we see they may not fall as stones do sometimes. Q. That is, to keep them from falling on people that pass by, and on children? A. Yes."

The stone which fell in this case had been set more than a dozen years, and apparently improperly. There were holes in the base, and corresponding holes in the headstone, for the purpose of inserting metallic dowels to keep the latter in place, but no dowels had been placed in the holes. The base was beveled from the point of contact with the headstone, and the stone must have gradually shifted so that it was ready to fall at the merest touch at the time of the accident. The evidence given by the plaintiff's wife was to the effect that the little girl was not playing at the time, and did not touch the stone, unless her attire may have brushed it as she was passing, while the defendant proved that had the stone been set in its proper place upon the base, even without dowels, its weight would have kept it firmly, so that it could only be dislodged by the application of considerable force beyond the power of the child.

The defendant owning the property, and lawfully assuming to supervise and control its care and maintenance, including the keeping of the monuments and tombstones in this portion of the grounds in safe and proper condition, the application to it of the general rule of liability for negligence necessarily follows. Donnelly v. Boston Catholic Cemetery Association, 146 Mass. 163, 15 N. E. 505. The rule is fairly stated by Mr. Justice Willard Bartlett in George v. Cypress Hills Cemetery, 32 App. Div. 281, 282, 52 N. Y. Supp. 1097, as follows:

"Having regard to the control which the law gave to the corporation, and which it actually exerted within the limits of the cemetery, I think its officers and agents were bound to exercise reasonable care not to permit the introduction into the lots, or upon or about the graves, of anything which they knew or ought to have known would constitute an unusual source of danger to persons lawfully visiting such lots or graves."

Cooley, in his work on Torts, at page 605, states that when one "expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger; and, to that end, he must exercise ordinary care and prudence to render the premises safe for the visit." See, also, Larkin v. O'Neill, 119 N. Y. 221, 23 N. E. 563; Hart v. Grennell, 122 N. Y. 371, 25 N. E. 354; Ford v. L. S. & M. S. R. Co., 124 N. Y. 493, 26 N. E. 1101, 12 L. R. A. 454; Flynn v. Central R. R. Co. of New Jersey, 142 N. Y. 439, 445, 37 N. E. 514.

It is obvious from what has been said that there is no element of contributory negligence in the proof, and that the defendant's negligence is fairly established from the condition of the tombstone on the day it fell, and which must have been discoverable upon ordinary inspection, but which inspection was never had, and also from the length of time which had elapsed since the stone was improperly placed in the first instance.

The judgment must be affirmed.

Judgment of the municipal court affirmed, with costs. All concur, except JENKS, J., who dissents.