GEORGE CLARKE, Appellant, *v.* IRENE VIRGINIA KEATING AND
Others, Defendants, Impleaded with EDITH LYKKE and
Others, Respondents.

Second Department, May 3, 1918.

Cemeteries — will reserving family rights in private cemetery —
abandonment of cemetery by removal of bodies — extinguishment
of rights of burial — partition — parties — extinguishing cloud
on title.

Although a will devising land reserved a privilege to the testator's family
forever of going to and from a private burying ground and burying the'r
dead there " if they incline so to do," the will conferred on the testator's
family collective rather than individual and isolated rights which were not
of a nature that any of them can sell or assign to one outside the family.

Where interments in the private burial ground were discontinued and the
bodies already buried were removed to another cemetery by the collective
act of the testator's family, no one of said family retained any further
burial privilege or any appurtenant right of way to and from the former
burying ground.

A holder of a deed of a cemetery lot, however strong may be the wording
of the grant and even if it uses terms of inheritance, acquires only a
privilege or license exclusive of others to make interments in the lot
purchased only so long as the lot remains a cemetery.

Hence, after the abandonment of the private cemetery under the circum-
stances aforesaid, the lands are left subject to sale or partition and the
court in a partition action can pass upon the issues involved.

In such action of partition the plaintiff may join former holders of burial
rights so as to extinguish any cloud upon the title.

APPEAL by the plaintiff, George Clarke, from so much of
an interlocutory judgment of the Supreme Court in favor of
the respondents, entered in the office of the clerk of the county
of Westchester on the 16th day of January, 1918, as directs
that the sale of certain premises in foreclosure shall be subject
to certain burial rights of the defendants.

This suit concerned the Purdy burying ground of about a
quarter acre in extent, with an appurtenant right of way out
to West street, Harrison, in Westchester county.

*Burton C. Meighan,* for the appellant.

*Eben H. P. Squire,* for the respondents Geraldine Willetts
and others, .

*Ffarrington M. Thompson* [*Eben H. P. Squire* of counsel], for the respondents Charles and Laura Purdy.

*Irene Virginia Keating,* a defendant, in person.

PUTNAM, J.:

Caleb Purdy's will, probated in 1794, after devising a described lot, continued: " Reserving at the same time a privilege to my family forever of going to and from a burying place in Lot No. 3, through the same and burying their dead there if they incline so to do."

This burial place had been set apart in the testator's lifetime. Up to ten years ago about seventy interments had been made in this Purdy burying ground. They ceased in 1907. The last burial was of a child in an unnamed grave. Instead of leaving the bodies in this inclosure, which was becoming neglected and run down, the Purdy representatives consented that all bodies be removed to a new plot in the Greenwood Union Cemetery in Rye, where they have been reinterred.

The court had, therefore, to inquire into the nature of any supposed burial rights in such a place where interments had ceased, and after the associations had passed with the removal of the bodies to a modern cemetery, with a system of care for graves, and records of the bodies that may preserve identification, after the weather-worn inscriptions have ceased to be legible.

Giving this Purdy reservation its full meaning, it conferred collective, rather than individual and isolated, rights, like those of an ordinary grantee or licensee of a burial lot. Its intent was to provide a common burial place for the testator's lineal descendants, but not such a right as any could sell or assign to one outside of the family. (*Brown* v. *Anderson,* 88 Ky. 577.)

Such contiguity in burial was not only a sentiment, but to aid records of kinship, pedigree and family history through such assembling of graves with adjacent memorials. After such purpose becomes ineffective by lawful removal of all the bodies, I think no member of the Purdy family retained any burial privilege, or any appurtenant right of way to and from a place in which are no more family burials. In the testator's words, the family do not " incline " to bury their

dead there. It is not for failure to keep up the property, or to care for the headstones, or to cut the grass, that the rights lapsed, but because by these disinterments the family have collectively abandoned this small family inclosure, in favor of the conditions better and more lasting furnished in a cemetery corporation.

Defendant Irene Virginia Keating joins in asking that the land be sold free and clear of such burial rights.

A holder of a deed of a cemetery lot, however strong may be the wording of the grant, even with a habendum using terms of inheritance, acquires only a privilege or license, exclusive of others, to make interments in the lot purchased, only so long as the lot remains a cemetery. (11 C. J. 60; *Buffalo City Cemetery* v. *City of Buffalo*, 46 N. Y. 503; *Went* v. *Methodist Protestant Church*, 80 Hun, 266; *Coates* v. *Mayor, etc.*, 7 Cow. 585; *Partridge* v. *First Independent Church of Baltimore*, 39 Md. 631; *Campbell* v. *City of Kansas*, 102 Mo. 326; 10 L. R. A. 593.) The abandonment of a cemetery does not follow from mere disuse and omitting to make new interments therein. (Perley Mortuary Law, 199.) But courts do regard the necessities and welfare of all the generations that are to follow. (*Rawson* v. *Inhabitants of School District No. 5 in Uxbridge*, 7 Allen, 125; *Thornton* v. *Mayor, etc., of the City of Natchez*, 129 Fed. Rep. 84; *Page* v. *Symonds*, 63 N. H. 17; *Bitney* v. *Grim*, 73 Oreg. 257, 262.)

After removal of bodies, the cemetery purpose has ceased. It is somewhat like the termination of the right of a pew-owner, upon the destruction of the church, or the abandonment of such an edifice to secular uses. (*Richards* v. *Northwest Protestant Dutch Church*, 32 Barb. 42.) A lotowner in a cemetery with the rights of a purchaser for value has a title that is deemed subordinate to the general cemetery purposes. If such considerations restrict a purchased burial lot, much more should they apply to one whose right to bury comes from mere association with members of a family. Here the removal of the bodies undoes the character and association which the interments conferred, and leaves the land subject to sale or to legal partition, as after a general disinterment it loses its sacredness as a resting place for the dead. (*Rayner* v. *Nugent*, 60 Md. 515.)

In the classic judgment of *Gilbert* v. *Buzzard* (3 Phil. Eccl. 335, 357) Sir WILLIAM SCOTT said: " Founded on these facts and considerations, the legal doctrine certainly is, and remains unaffected, that the common cemetery is not *res unius ætatis*, the exclusive property of one generation now departed; but is likewise the common property of the living, and of generations yet unborn, and subject only to temporary appropriation."

Even without precise precedent, land that has lost its sacred character should not be withheld from serving the needs of the community, through a mere sentiment regarding a site in which the higher uses have ceased. The Roman law hallowed not only a cemetery, *solum religiosum*, but regarded a single lawful burial as a dedication of such a site to religious use. However, the strong practical sense of that civilization favoring extinguishment of rights by nonuser, held cemeteries and single burial places as reserved from trade only while such burials remained. After disinterment and removal of the body or remains, the religious character of the ground ceased (*desinit locus religiosus esse* [Dig. XI, tit. 7, § 44]).

Finally it is contended that these questions should not be passed upon in a partition suit. However, the Code of Civil Procedure (§§ 1539, 1546, 1557, 1567) enlarges that remedy. Such issues no longer require additional and separate suits, but may all be determined in the one partition action. (20 R. C. L. " Partition," § 12.)

Plaintiff may join such holders of burial rights so as to extinguish such clouds on his title (for after the removal of all bodies, further claims of burial privileges are only in the nature of clouds), and so have a sale giving a title free and clear. (*Satterlee* v. *Kobbe*, 173 N. Y. 91; *Kellum* v. *Corr*, 209 id. 490.)

I advise to sustain the appeal, and to modify the interlocutory judgment by directing a sale free and clear of any burial rights; costs of this appeal to abide the final award of costs.

JENKS, P. J., MILLS, BLACKMAR and KELLY, JJ., concurred.

Appeal sustained, and interlocutory judgment modified by directing a sale free and clear of any burial rights, and as modified affirmed, with costs of this appeal to abide the final award of costs.