In the Matter of the Estate of SAMUEL ROSEN, Also Known as SAM ROSEN, Deceased.

Surrogate's Court, Kings County, February 14, 1940.

*Bregman & Bregman*, for Mae Brandman, as administratrix, etc., petitioner.

*Jacob Freed Adelman*, for Harry Rosen, respondent.

Wingate, S.   So far as the diligence of counsel and the independent research of the court has disclosed, the situation revealed in this proceeding is unprecedented.

The present petitioning administratrix appears to have become enmeshed in a procedural difficulty which possesses no direct relation to the merits of the controversy of whether or not Harry Rosen should deliver certain specified assets to her.

The petitioner secured an order in discovery proceedings on June 26, 1939, for the examination of Harry Rosen and examined him at length on its return.   No facts were elicited which tended to demonstrate that he had possession of any assets properly belonging to the estate.   The proceeding was " adjourned *sine die*."   After waiting for several months, the petitioner moved on the testimony taken on the examination for an order directing the respondent to turn over certain specified assets to her   Since the only demonstration in the record negatived any rights to this relief, the motion was denied and the proceeding was dismissed.   The order in this regard which was entered on December 8, 1939, provided, however, " Ordered that such determination is without prejudice to the institution, upon proper proof, of an action in replevin in a court of general jurisdiction or its substantial equivalent in this court."

This inclusion in the order renders it obvious that nothing was adjudicated on the merits, the only determination being that the examination of Harry Rosen had disclosed nothing which would warrant this court in making a direction that he should deliver any identified asset or its proceeds to the administratrix.

On January 27, 1940, the administratrix secured a second order for examination in discovery directed against the same respondent, Harry Rosen, and also against his brother, Edward Rosen, who was not a party to the former proceeding.   The petition is directed to four specified items of property, namely, sixty-six shares of Rosen Brothers Co., Inc., thirty-eight and eight-ninths shares of Graham Amusement Corporation, thirty-three and one-third shares of Bushwick Amusement Corp., and a cemetery plot of eight graves in Mt. Zion Cemetery.

The second and third items of stock are asserted to have been sold by the decedent to his brother, Louis Rosen, in September, 1938, some four months prior to his death, for an aggregate cash consideration of $6,000, which money is asserted to be " now in the possession of the respondents herein or either of them."   It is

further alleged that the respondents acted in a fiduciary capacity to the decedent and " that from the date of the death of the decedent the respondents and particularly the respondent Harry Rosen, retained and continued to retain the aforesaid cash, shares of stock and deed to the cemetery plot as their and/or his property and said respondents and each of them refuse and still refuse to turn the same over to your petitioner as administratrix of the estate of the decedent."

The petition further asserts that the information set forth in its allegations was secured by the administratrix by independent investigation since the dismissal of the former proceeding.

The prayer for relief seeks an inquiry respecting the property referred to; that Harry Rosen and Edward Rosen be ordered to attend and be examined; that the matter be set down for hearing on the contested calendar " and the respondents be directed to deliver said property to * * * petitioner, if it is in their possession or control;" and for such other relief as may be just.

Not content with mere opposition to this application, the respondent, Harry Rosen, secured an order to show cause why its initiating process should not be vacated. This was predicated solely on his affidavit which is a combined statement of the facts respecting the previous proceeding, which, so far as relevant, have heretofore been noted, and a memorandum of law which is no proper part of an affidavit by a lay party.

This affidavit, which for present purposes may properly be treated as an answer to the petition of the administratrix, is viewable in three aspects, namely, *first,* as opposing an examination of Edward Rosen, the brother who was not a party to the previous proceeding; *second,* as a motion to dismiss so much of the petition as refers to the burial plot; and *third,* as opposing any further proceeding against Harry Rosen.

Since Edward was not a party to the previous proceeding, there is no inherent reason why he should not submit to an inquisition on the part of this fiduciary who is merely attempting to perform her obligation of reducing the proper assets of the estate to legal custody. The allegations of the petition are categorical to the effect that both respondents retained the stock and cash which are the subject-matter of the proposed inquisition.

The only circumstance which is advanced as a reason for relieving Edward of the ordinary obligation to submit to examination, is the unsupported statement of his brother that " he is a victim of ' Encephalitis,' which has made him a cripple and paralytic for life. His mental capacity has likewise suffered * * *." This, of itself, is insufficient. Cripples and morons are frequently called

upon to serve as witnesses in all courts; wherefore, even were the unsupported statement of this lay affiant to this effect to be accepted at its face value, it would supply no reason for vacating the order in this respect.

The second question of importance relates to the burial plot. The respondent urges that this item should be eliminated by reason of the fact that this court possesses no authority to adjudicate the title to real estate in a proceeding of this nature. The result to the respondent is correct, though the reason assigned therefor is wrong.

The purchaser of a cemetery plot acquires no title to the soil but merely an easement or right of burial. (*Buffalo City Cemetery* v. *City of Buffalo*, 46 N. Y. 503, 505; *Went* v. *Methodist Protestant Church*, 80 Hun, 266, 273; affd., 150 N. Y. 577; *Clarke* v. *Keating*, 183 App. Div. 212, 214; *Oatka Cemetery Assn.* v. *Cazeau*, 242 id. 415, 417; *Smith* v. *Rector, etc., of Trinity Church*, 140 Misc. 301, 302; affd., 234 App. Div. 840.) In so far as this has not been exhausted by the purchaser himself, it descends pursuant to the pertinent statutes (Religious Corp. Law, § 8; Membership Corp. Law, § 84; Gen. Municipal Law, § 163), and the administratrix, as such, possesses no rights therein, or concern therewith. It follows that so far as her proceeding relates to the burial plot of the deceased, it must be dismissed.

The final issue relates to the propriety of the remaining portions of the discovery proceeding so far as Harry Rosen is concerned.

The petitioner asserts that Harry Rosen has certain described property which should be delivered to her, in her fiduciary capacity. In his previous examination, directed pursuant to section 205 of the Surrogate's Court Act, he interposed no answer but his testimony traversed the assertion. The verity of the opposing positions has never been adjudicated, and the administratrix possesses an unquestionable right to secure such a determination.

It is the boast of Anglo-Saxon jurisprudence that no right can exist without a remedy for its enforcement. Unquestionably an action in replevin could be instituted in the Supreme Court, as was intimated in the former memorandum in relation to this same controversy. This remedy is, however, not exclusive. Subdivision 4 of section 40 of the Surrogate's Court Act expressly accords authority to surrogates " to enforce against a respondent the delivery of personal property, or the payment of the proceeds or value of personal property belonging to or withheld from an estate."

This authority has on numerous occasions expressly been vindicated by the appellate courts. (*Matter of Akin*, 248 N. Y. 202, 206.) (See, also, *Matter of Wilson*, 252 id. 155, 158; *Matter of Comfort*, 234 App. Div. 19, 21.)

In *Matter of Nutrizio* (211 App. Div. 8, 13) the Appellate Division for the First Department pointed out that a discovery proceeding consists of two parts, namely, *first*, an inquisition, and *second*, one for adjudicating the title to any property, the possession of which by a respondent has been demonstrated or admitted. It is further observed: " Its purpose of eliciting information as to the whereabouts of decedent's property is quite distinct from the recovery of such property." The separate natures of the two phases of a discovery proceeding have been stressed in many subsequent decisions. (See *e. g., Matter of Comfort*, 234 App. Div 19, 25; *Matter of Kevill*, 166 Misc. 230, 233, *Matter of Hilliard*, 172 id. 273, 274, 275.)

Ordinarily a discovery proceeding embraces both the inquisition and the trial of title. Since, however, they are in reality separate, there is no reason why this procedure should invariably follow and it does not, in cases in which an answer is interposed by which possession is admitted and a claim of title asserted. Respecting such a situation the Appellate Division for this Department wrote in *Matter of Comfort* (234 App. Div. 19, 25):

" No such preliminary inquiry is necessary in this proceeding. A claim of title is positively and unequivocally asserted by the respondent, and it would be a waste of time and serve no good purpose to have a preliminary inquiry or hearing before the surrogate.

" In our opinion, it matters not whether the claim of title is presented during or after an inquiry by the surrogate, or whether it is raised in the proceeding by a verified answer. In either case, either party is entitled to a jury trial."

The converse of the situation adjudicated in *Matter of Comfort* is here present. The petition describes certain allegedly specific property, asserts that it is in the possession of the respondent Harry Rosen, that it should be delivered to the administratrix and demands the relief which subdivision 4 of section 40 of the Surrogate's Court Act expressly authorizes the court to grant. In this situation no prelimiary inquisition would ordinarily appear necessary. Since, in the present instance, it has already been had as to Harry, it should not take place in any event. This, however, supplies no reason for denying a trial on the merits of the basic issues tendered by the present petition. It surely cannot be the law that a respondent who, in fact, is in the possession of assets which rightfully belong to an estate can defeat a recovery thereof by the mere expedient of a perjurious denial of the rights of the fiduciary. The court does not intimate that this is actually the present fact. It is, however, the implied assertion of the petitioner, and she is entitled to her day in court to prove the merits of her position.

It may not be amiss in closing to impress upon the petitioner that the jurisdiction of this court in cases of this variety extends only to the award of relief in situations in which it is demonstrated that specific money or other personal property, or the proceeds or value thereof, are in the possession of a respondent (*Matter of Sichel*, 162 Misc. 2, 3, 4) and that it possesses no authority to award recovery for a debt. (*Matter of Hammer*, 237 App. Div. 497, 501; affd., 261 N. Y. 677, *Matter of Jastrzewski*, 252 App. Div. 384, 385; *Matter of Hilliard*, 172 Misc. 273, 275.) The allegations of the petition assert the possession of sixty-six shares of stock and of a specific total of $6,000 received from the sale of other stock. Wherefore, on its face, it indicates the presence of jurisdiction.

The concrete determinations attained are as follows: (1) Edward Rosen will appear for examination pursuant to the order dated January 24, 1940; (2) so much of the petition as relates to the cemetery plot will be dismissed; (3) so much of the order as directs the further appearance for examination of Harry Rosen will be vacated; (4) Harry Rosen will be accorded ten days within which to file and serve an answer to the petition; (5) upon the expiration of such period the issues may be set down for hearing by either party on usual notice.

Enter order on notice in conformity herewith.