In the Matter of the Probate of the Will of ROBERT J. WALKER, Deceased.

Under the provisions of the Code of Civil Procedure (§§ 2624, 2625, 2626), which provide that when a party to a proceeding for the probate of a will expressly puts in issue before the surrogate the validity, construction or effect of any disposition of personal property, the surrogate must determine the question, unless probate is refused, the jurisdiction of the surrogate is limited, and the investigation must be confined to questions arising between the parties growing out of the terms of the will, and not involving the title of the estate to the property attempted to be disposed of.

The surrogate has no power under said provisions to pass upon a question of title to property, as between a claimant and a representative of the testator's estate.

Where, therefore, a will gave certain legacies which were described as moneys deposited in certain savings banks by the testator as trustee for the legatees, a portion of which deposits were drawn out by the testator and converted to his own use, and where upon probate of the will the beneficiaries named appeared and claimed that the moneys so deposited did not belong to the testator at his death but to the persons designated as beneficiaries, and where it was also claimed that certain legacies to charitable and religious institutions exceeded one-half of the estate left by him after payment of debts and expenses; and so, were void for the excess, under the provision of the statute limiting bequests to such institutions (Chap. 360, Laws of 1860), as the testator left children surviving, *held*, that the surrogate had no jurisdiction in proceedings for probate to determine those questions.

Also *held,* that the consent of the parties to litigate these questions before the surrogate did not confer jurisdiction or estop a party from raising the objection on appeal from the decision of the surrogate.

(Argued October 14, 1892; decided November 29, 1892.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made February 13, 1892, which affirmed a decree of the Surrogate's Court of Kings county, admitting to probate the will of Robert J. Walker, deceased, and deciding certain questions in reference thereto raised on probate.

By the terms of the will, various legacies, amounting in all to over $65,000, were given to beneficiaries named. These legacies were described as moneys deposited by the testator in various savings banks named, the deposits in each case save one, having been made by him as trustee for the beneficiary.

The other provisions of the will, so far as material, and the facts pertinent to the questions discussed, are stated in the opinion.

*Matthew Hale* for Catherine E. Bond, appellant. The surrogate's decree that certain money deposited in the savings bank did not belong to the estate was without jurisdiction, and should be reversed. (Code Civ. Pro. § 2624; *McClure* v. *Wooley,* 1 Dem. 574; *In re Keelman,* 126 N. Y. 73.) If the Surrogate's Court had jurisdiction, there was no error in adjudging that the deposits belonged to the *cestui que trust,* and did not pass by the will. (*Macy* v. *Williams,* 125 N. Y. 767; 55 Hun, 489; *Current* v. *Jago,* 1 Colby, 261; *Leche* v. *Kilmorey,* T. & R. 207; *Cailland* v. *Lloyd,* 6 M. & W. 26.) The withdrawal from the deposits wherein Mrs. Bond was beneficiary were unauthorized, and should be replaced with interest by the executors. (*Drossner* v. *Brereton,* 15 Beav. 221; *Richie* v. *Putnam,* 13 Wend. 524; *N. E. Bank* v. *Silliman,* 65 N. Y. 475; *Lincoln* v. *French,* 105 U. S. 614; *Martin* v. *Funk,* 75 N. Y. 134; *Willis* v. *Smyth,* 91 id. 297; *Mabie* v. *Bailey,* 95 id. 206; *In re Atkinson,* 16 R. I. 413.)

*Edmund L. Baylies* for Missionary Society, appellant. Chapter 360 of the Laws of 1860, entitled "An act relating to wills," has no application in this case. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 434; *Hollis* v. *D. T. Sem.*, 95 id. 166; *Stephenson* v. *Short*, 92 id. 433; *Lawrence* v. *Elliot*, 3 Redf. 235; *Jackson* v. *Robbins*, 16 Johns. 489.) The mere deposit by A of a sum of money in a savings bank in his own name in trust for B is not of itself a complete declaration of trust. (*Martin* v. *Funk*, 75 N. Y. 134; *Boone* v. *C. S. Bank*, 84 id. 83; *Willis* v. *Smyth*, 91 id. 297; *Mabie* v. *Bailey*, 95 id. 206; *Schluter* v. *B. S. Bank*, 117 id. 125; *Beaver* v. *Beaver*, Id. 421.) Money may be put out of a person's hands with the intention of creating a trust with respect to it, and such declaration may be made by a subsequent will. (*Harrison* v. *M'Mennomy*, 2 Edw. Ch. 251, 257.) The money deposited in trust forms a portion of testator's estate within the meaning of the word estate, as used in chapter 360, Laws of 1860. (2 Sugden on Powers, 23; *Jackson* v. *Davenport*, 20 Johns. 536, 550; *Seibert's Appeal*, 110 Penn. St. 329; *N. Y. L. I. & T. Co.* v. *Livingston*, 30 N. E. Rep. 274.) If Mrs. Bond seeks to establish a breach of the trust, it is for her to prove that breach beyond reasonable doubt. The mere fact of showing that the deposits were made and that some of the money was subsequently withdrawn, is not sufficient proof. (*Boone* v. *C. S. Bank*, 84 N. Y. 83.)

*Morris & Steele* for Home for Old Men, appellant. It is clear that if an action had been brought by any of the beneficiaries named in the bank books during the lifetime of the testator, his testimony that it was his intention that no estate was to vest in the beneficiary during his life and after his death, only such as he should bequeath to them by his will would be controlling upon the court. (*Martin* v. *Funk*, 75 N. Y. 134; *Mabie* v. *Bailey*, 95 id. 209; *Weber* v. *Weber*, 58 How. Pr. 255; 9 Daly, 211.) The claim of Catherine E. Bond to the sums withdrawn by the testator during his life-

time is without foundation in law. (*Mabie* v. *Bailey*, 95 N. Y. 206 ; *Gray* v. *Gray*, 47 id. 532; *Devlin* v. *G. S. Bank*, 125 id. 756 ; *Hagler* v. *McCoombs*, 66 N. C. 345.)

*Benjamin T. Ripton* for executor, respondent. A withdrawal by a trustee of the whole or part of a fund deposited by him as trustee for another and a redeposit under the same trust in another bank of the amount withdrawn is not an act inconsistent with the trust, but is a mere change of investment within the scope of his authority as trustee. (*Mabie* v. *Bailey*, 95 N. Y. 206–212.) The burden of proving a gift is upon the claimant and the law never presumes a gift. (*Nay* v. *Curley*, 113 N. Y. 578 ; *Lewis* v. *Merritt*, 42 Hun, 161 ; *Grey* v. *Grey*, 47 N. Y. 555 ; *Doty* v. *Wilson*, Id. 584.) The claim made by the societies that the money deposited in the several banks by the testator, as trustee for the several beneficiaries, was a part of his estate, is untenable. (*Martin* v. *Funk*, 75 N. Y. 134 ; *Willis* v. *Smyth*, 91 id. 297 ; *Mabie* v. *Bailey*, 95 id. 209 ; *Fowler* v. *B. S. Bank*, 113 id. 453 ; *Schluter* v. *B. S. Bank*, 117 id. 125.)

*Francis E. Dana* for other respondents. The deposit of money in a savings bank by Robert J. Walker to his credit as trustee of, or in trust for Jane Ann Chambers, and her children, Annie Elizabeth Chambers, William B. Chambers, Brook Rind Chambers, and for others, created an irrevocable trust in their favor, and at his death, if not before, the *cestui que trust* were absolutely entitled to such deposits and to the bank or pass books showing the same. (*Martin* v. *Funk*, 75 N. Y. 134; *Willis* v. *Smyth*, 91 id. 297 ; *Mabie* v. *Bailey*, 95 id. 206 ; *Scott* v. *Harbeck*, 49 Hun, 292 ; *Schluter* v. *B. S. Bank*, 117 N. Y. 125 ; *Beaver* v. *Beaver*, Id. 421 ; *Young* v. *Young*, 80 id. 422 ; *Boone* v. *C. S. Bank*, 84 id. 86 ; *Fowler* v. *B. S. Bank*, 113 N. Y. 450 ; *Macy* v. *Williams*, 125 id. 767.) Money so deposited constituted no part of the estate of Robert J. Walker at his decease and after deducting such deposits only one-half of the remainder could be bequeathed by him to

the societies named in the will, and as to the other half he died intestate and it goes to his children, David B. Walker, Jane Ann Chambers and Catherine E. Bond, except so much thereof as is needed to make up the legacy to Annie Elizabeth Chambers. (3 R. S. [6th ed.] 58, § 4; Laws of 1860, chap. 360, § 1; Laws of 1848, chap. 319; *Kearney* v. *M. Society*, 10 Abb. [N. C.] 274; *In re Moderne*, 5 Den. 288; *Lefevre* v. *Lefevre*, 59 N. Y. 434; *Kerr* v. *Dougherty*, 79 id. 327; *Hollis* v. *D. T. Sem.*, 95 id. 166; *Mabie* v *Bailey*, Id. 211; *Boone* v. *C. S. Bank*, 84 N. Y. 86; *Meigs* v. *Meigs*, 15 Hun, 453.) The two societies have appealed from section V of the decree directing the delivery of the bank books to the beneficiaries, but in this part of the decree they are not interested, and are not thereby aggrieved. (Code Civ. Pro. § 2568.) The surrogate had the power and it was his duty to pass upon the questions, which were expressly put in issue before him. And to this all parties have agreed by submitting to his jurisdiction, and not appealing from any part of the decree on that ground. (*In re Keleman*, 126 N. Y. 73; *In re Vowers*, 113 id. 569.)

MAYNARD, J. Upon a proceeding for the probate of the will of Rev. Robert J. Walker, deceased, before the surrogate of Kings county, three questions were submitted to the court for adjudication, and have been passed upon by it.

*First.* Whether the testator was the owner, at the time of his death, of the moneys represented by deposits in various savings banks in New York city, Brooklyn and elsewhere, aggregating over $65,000, and which are specially referred to in different provisions of his will.

*Second.* Whether he was indebted, at the time of his death, to his daughter, Mrs. Catherine E. Bond, in the sum of $7,557, which represented the amount which he had, at various periods of his life, deposited in certain savings banks in his name, as trustee for his daughter, and which he had subsequently drawn out and converted to his own use.

*Third.* Whether the legacies in the will, to the amount of

$24,800, given to two charitable and religious societies, viz.: The Home for Old Men and Aged Couples, connected with the Protestant Episcopal Church in the city of New York, and the Protestant Episcopal Church Missionary Society for Seamen in the same city, must not abate to the extent to which they may be in excess of one-half of the estate left by him after the payment of all just debts and the necessary expenses of executing the provisions of his will.

Upon each of these questions issues of fact were raised and much extrinsic evidence given, and the surrogate finally decreed that the moneys so deposited did not belong to the testator when he died, and formed no part of his estate, but belonged absolutely to the several persons designated as the beneficiaries of the deposit in each case, and that the bank or pass books belonged to such persons, and the executors, who might qualify, were directed to deliver such books to them; and with respect to one deposit of $2,104, which stood to the individual credit of the testator, it was decreed that the moneys belonged to a grandson, and was no part of his estate, and that the grandson was entitled to the possession of the bank or pass book representing such deposit, and to the principal and interest thereof. It was further decreed that the claim made by Mrs. Bond to the moneys deposited by the testator, as trustee for her, and subsequently withdrawn, should be disallowed, and that the total amount of the estate left by the testator was $26,464, and that the charitable and religious societies named could take only one-half of this sum after making the proper deductions for debts and expenses.

This decree purports to have been made pursuant to the authority conferred upon the surrogate by the provisions of sections 2624, 2625 and 2626 of the Code of Civil Procedure, which provide, in substance, that if a party to a proceeding for the probate of a will, expressly puts in issue before the surrogate the validity, construction or effect of any disposition of personal property contained therein, the surrogate must determine the question upon rendering a decree, unless probate of the will is refused, and enter a decree accordingly, and, if

required by either party, he must enter in the minutes the grounds of his decision, and the decree is conclusive only upon the petitioner and each party who was duly cited or appeared and every person claiming from, through or under either of them,

In their application to Surrogates' Courts generally, these provisions of the Code are new. They are, in substance, found in section 11 of chapter 359 of the Laws of 1870, entitled " An act in relation to proceedings in the Surrogate's Court of the county of New York, and to the powers and jurisdiction thereof ; " but that act conferred much broader powers, for it declared that the surrogate should have the same power and jurisdiction as were then vested in and exercised by the Supreme Court to pass upon and determine the true construction, validity or legal effect of any disposition of real or personal property contained in any will offered for probate before him in the proceeding for such probate. When the second part of the Code was adopted, the local act was repealed, and the authority extended in its abridged form to all the Surrogates' Courts of the state.

Whatever may have been the true interpretation of the act of 1870, we do not think that, under the provisions of the Code referred to, the surrogate had jurisdiction to hear and determine any of the questions submitted to him in the manner in which they are presented by the record under review. With respect to the legacies to the charitable and religious societies, no construction of the will and no decision as to their validity or legal effect was necessary in order to determine the exact rights of the legatees. The language of the bequests is clear and unambiguous, and no question could arise in regard to the quantum of the estate to which they are entitled under the will, were it not for the statute which limits the amount which such societies may take, where the testator has children surviving him, to one-half of his estate after the payment of his debts. (Laws 1860, ch. 360.) The law prescribes the maximum limit of the aggregate of such legacies, and the will is to be read as if the statutory restriction was a part of it.

If it had, in terms, provided that these institutions should have one-half of his estate after the payment of his debts, but not exceeding twenty-four thousand eight hundred dollars in all, it would have merely stated, in another form, the effect of the bequests under consideration. When the surrogate decreed that these legatees were not entitled to more than one-half of the estate, after the payment of the debts, and that, as to the other half, he died intestate, it was a simple statement of the legal effect of the will and the statute when read together. There was nothing uncertain or indefinite about these legacies, save the amount which the legatees would eventually take, and this could not be ascertained except in the orderly administration of the affairs of the estate. There is scarcely a will probated in which it might not be said that the same uncertainty exists with reference to some of its provisions. A legatee to whom the whole or a designated portion of an estate is given, after the payment of debts and specific or general legacies, would have the same grounds for appearing upon the probate of the will and asking the surrogate to ascertain and determine the extent of his legacy. The surrogate cannot then make an inventory of the estate, or adjudicate upon its liabilities. Such issues must be postponed until the executor or other official representative of the estate has been appointed, upon whom the law has cast the responsibility of action in regard to such matters, and prescribed the method of his procedure.

That the surrogate could not pass upon the validity of the claim of Mrs. Bond, is too plain for discussion. The entire scheme of the statute creating and defining the powers of that officer, has carefully excluded from him the cognizance of disputed claims against the estate of deceased persons; unless it is a debt due to an executor or administrator, or one provable in proceedings for the sale of real estate.

Jurisdiction in this case is asserted, because it is deemed to be necessary to determine the net value of the estate for the purpose of ascertaining what portion of it will pass to the charitable and religious societies under the will. But as the principal question to which this inquiry relates cannot lawfully

be determined in this proceeding; every subject incidentally involved in it is necessarily excluded.

The most important branch of this controversy relates to the title of the testator to the savings banks deposits. These were claimed by the respondents not by virtue of the will, or of any provision in it, but in hostility to it. The trial of such an adverse claim of title was not, we think, contemplated by the legislature when it clothed the surrogate with the powers enumerated in section 2624. The validity of a disposition of personal property by will which can be determined in a proceeding for probate, necessarily assumes that the property belonged to the testator, but the form or manner in which he has undertaken to dispose of it is made the subject of contest. Questions of title to property have always been reserved for the common law courts, or statutory tribunals invested to some extent with their powers, where the right to a jury trial is guaranteed, except in cases of equitable cognizance Nor can such questions be properly or finally adjudicated without the presence of the official representative of the estate in the person of the executor or administrator with the will annexed, as a party to the proceeding, who has not yet been appointed, although this decree assumes to direct and control his conduct in advance of his appointment and requires him, when he has qualified, to deliver to the claimants the evidence of title to the disputed property which may be in his possession. This difficulty in the way of a complete determination of the questions litigated is of itself sufficient to support the conclusion that it was the intent of the law to confine the investigations in these cases to questions arising between the parties to the proceeding as between different legatees, or between heirs at law and the legatees, growing out of the terms of the will and not involving the title of the estate to the property to which they refer. In such contests the executor, if appointed, would, ordinarily, be an indifferent spectator, and hence there would be no impropriety in determining them in his absence The estate would not be augmented nor depleted whatever the event might be.

We cannot recall any statutory provision which authorizes the surrogate in any proceeding to pass upon the question of title to property as between a claimant and a representative of the testator's estate. Jurisdiction in all such cases seems to have been scrupulously and intentionally withheld. If the executor has reason to believe that any assets belonging to the estate are detained by any person in whose possession they may be, he may make application to the surrogate for an order requiring such person to show cause why he should not deliver the property to the executor; but if, upon the return of the order, the title or the right of possession of the executor to the property is disputed, the surrogate must dismiss the proceeding, and the executor is remitted to his legal remedies in some other forum.

It is contended that the construction of the provisions of the will in this case is involved, because the testator has described the legacies given to the respondents as sums of money which he has deposited from time to time, as trustee for them respectively, in certain designated savings banks; but this language is merely descriptive of the property attempted to be disposed of, and would not require special consideration were it not for the claim of title made by the respondents independently of the will. It may be an important item of evidence which would have great weight in shaping the conclusions of a trial court, but it affords no ground for judicial construction upon the probate of the will.

The objections to this decree are jurisdictional. The consent of the parties is not sufficient to avoid their fatal effect. Wherever there is a want of authority to hear and determine the subject-matter of the controversy, an adjudication upon the merits is a nullity and does not estop, even an assenting party. (*Chemung Canal Bank* v. *Judson*, 8 N. Y. 254.)

The present case illustrates the futility of the attempt to obtain jurisdiction of the subject-matter by the voluntary submission of the parties. The defeated party is not likely to acquiesce in the judgment, and he may raise the question for the first time on appeal as one of the parties to this record

has done. She had the legal right to adopt such a course, and it would have been the duty of the court to have directed a reversal of the decree for want of jurisdiction, even if the point had not been distinctly raised.

The order of the General Term and the decree of the surrogate, except that part which admits the will to probate, must be reversed, without costs to either party.

All concur.

Order reversed.