1897 (chapter 378, p. 1, of the Laws of 1897) and by the charter of 1901 (chapter 466, p. 1, of the Laws of 1901). Section 1416 of the charter of 1901 contained substantially the same provisions as the act of 1895 in relation to the qualifications of justices of the Court of Special Sessions, and prohibited them from practicing as attorneys and counselors at law, or from holding any other public office, or carrying on any other business. The act of 1895 was not repealed and is still in force, and under its provisions this court has power to remove the justices of the Court of Special Sessions "for cause"; this following the provisions of section 17 of article 6 of the Constitution, that "justices of the peace and judges or justices of inferior courts not of record, and their clerks, may be removed for cause, after due notice and an opportunity of being heard, by such courts as are or may be prescribed by law."

We think that these charges present a situation which requires that this court should take cognizance of them and that the defendant should be required to answer. The respondent raises a point as to the constitutionality of the provision that a justice of the Court of Special Sessions shall not carry on any business; but we think it clear that the Legislature that created the court and provided for the appointment of the justices thereof had authority to provide for the qualifications of the justices to be appointed and to regulate their proceeding while in office. There was nothing that required any particular individual to become a justice of the Court of Special Sessions, and nothing that invaded any of the constitutional rights of any individual; but any one who accepted an appointment as a justice of the Court of Special Sessions was bound to comply with the provisions of the statute while holding the office. This respondent can engage at any time in any business that he sees fit, by resigning his position as a justice of the Court of Special Sessions; but as long as he holds that position he must comply with the statute.

The other objections taken by the respondent to the petition should not be discussed at this time. After the answer of the respondent is filed, the question will then be presented as to subsequent proceedings which can be determined when it arises. The objection of the respondent to the petition is therefore overruled, and the respondent is required to answer within 10 days.

(49 Misc. Rep. 32.)

### GICK v. STUMPF.*

(Surrogate's Court, Saratoga County. December, 1905.)

1. EXECUTORS—DISCOVERY OF ASSETS—EXAMINATION OF THIRD PARTY.

Where an executor applies, under Code Civ. Proc. §§ 2706–2714, for an order permitting him to examine a person alleged to be in the possession of certain property of the estate, he is entitled to an order permitting such examination, and the person sought to be examined cannot defeat it by a verified answer alleging that he has no property of the estate in his possession, and that he is an absolute owner of the property described in the executor's petition.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 343, 347.]

2. SAME—TERMINATION OF PROCEEDING.

   Code Civ. Proc. § 2710, providing for terminating a proceeding for the examination of a person claimed to have property belonging to an estate in his possession, where a dispute arises as to the ownership of the property, does not refer to a dispute created by the allegations in the answer to the petition for the examination, but to one arising after the examination of such person.

   [Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 347.]

In the matter of the application of Frank Gick, executor of Rosina Stumpf, for a discovery against Frank Stumpf.

This is a proceeding to discover property of the estate withheld from the executor or administrator, founded upon a petition setting forth that about $1,200, which was in the possession of the deceased within two years prior to her death, is in the possession or under the control of one Frank Stumpf, who was about the person of the deceased prior to her death and in whose hands the effects of the said deceased have fallen and who withholds the same from the petitioner, together with the documents and papers belonging ·to the deceased, and all knowledge and information ·relating to them. Frank Stumpf has filed an answer, alleging he is the absolute owner of the sums of money, property, goods, chattels, and credits mentioned in the petition, and that he was such owner thereof at the time of, and for a long time prior to, the death of the said Rosina Stumpf.

Chambers & Finn, for petitioner.
George B. Lawrence, for respondent.

LESTER, S. This proceeding is brought under sections 2707 et seq. of the Code of Civil Procedure, contained in article 1 of title 4 of chapter 18, and relating to the aid, supervision, and control of an executor or administrator. The present statute is derived from chapter 394, p. 928, of the Laws of 1870, which, together with its various modifications since that date, has been the subject of much discussion by the courts. In 1880 the·General Term of the Third Department held that this statute was unconstitutional, because, under its provisions, a person might be deprived of his property without due process of law. Matter of Beebe's Estate, 20 Hun, 462. The following year the General Term of the First Department held that the act was not unconstitutional, because it involved merely the question of possession, in a case where possession was wrongfully withheld from the petitioner, and that, although it dispensed with a jury trial, it was not on that account to be considered unconstitutional; for a trial by a jury was not in all cases an essential element in due process of law; for cases within the jurisdiction of the equity courts, although they often involved the title and final disposition of property, are nevertheless due process of law within the meaning of the Constitution. Matter of Curry's Estate, 25 Hun, 321. The same year, 1881, the Legislature amended the statute by inserting in section 2710 the following provision:

"In case the person so cited shall interpose a written answer, duly verified, that he is the owner of said property, or is entitled to the possession thereof by virtue of any lien thereon or special property therein, the surrogate shall dismiss the proceeding as to such property so claimed."

Under this provision it was held by the General Term of the Third Department (Matter of Wing, 41 Hun, 452) that, where the respondent asserted in his answer that he had a lien upon the property and

claimed the right to its possession, the surrogate, having the right to determine the question of possession, but not the question of title, had no jurisdiction of the issues necessary to be decided in order to decide whether the respondent should surrender the property and thereupon affirmed the order of the surrogate dismissing the proceedings. Judge Parker dissented, stating that, as the answer was not in the form provided by statute, the surrogate was not ousted of jurisdiction, and therefore was bound to permit the examination to go on.

In Doyle v. Doyle, 15 N. Y. St. Rep. 318, it was held that, where the answer conformed to the statute, the surrogate had no power to investigate the verity of the denial. In Matter of Estate of Hasings (Sur.) 2 N. Y. Supp. 22, where the answer was held insufficient because too general, the surrogate ordered the examination to proceed; and in Matter of Peyser, 35 App. Div. 447, 54 N. Y. Supp. 832, where the answer was insufficient because in the alternative, the same rule was followed. In Matter of Estate of Cunard (Sur.) 6 N. Y. Supp. 883, where it appeared by the answer that the respondent originally came rightfully into possession of the assets of the decedent with the right to dispose of them, that they remained in his possession under the same terms subsequent to the decedent's death by virtue of his contract with the representative of the decedent's estate, and that the respondent had disposed of them in accordance with these arrangements—it was held that the petition should be refused, the surrogate remarking that, if the application should be granted, it would virtually be for an inquisitorial purpose.

In Matter of O'Brien v. Baker, 65 App. Div. 282, 72 N. Y. Supp. 1001, the respondent answered, alleging that he had been appointed temporary administrator of the estate of the decedent by a court of competent jurisdiction in the state of Texas, and had in his possession as such temporary administrator certain personal property of the decedent located in Texas; that all the property of the decedent in his possession or under his control, except that in the state of Texas, had been turned over by him to the petitioner; that, as to the Texas property, he was entitled to the possession thereof by virtue of a special property therein arising out of his appointment as temporary administrator; that he had withheld no information in regard to any property belonging to the estate of the decedent, but had given all the information in his power to the petitioner and had repeatedly offered to answer any question in regard to the estate which the petitioner might ask. The court held that this answer did not set up a lien thereon or special property therein upon the part of the respondent. His appointment as temporary administrator in Texas constituted him a mere custodian of the property, and that the case was one to which the provisions of the Code were designed to apply, and that the order of the surrogate directing the respondent to attend and be examined should be affirmed. In this case Judge Ingraham, in a carefully written opinion, says (page 286 of 65 App. Div., page 1003 of 72 N. Y. Supp.):

"It will be noticed that this section [2707] is not confined to a proceeding to compel a person in the possession of property belonging to a decedent to deliver such property to the administrator. It also provides for a case where there is personal property that should be included in an inventory or appraisal,

and which 'is in the possession, under the control or within the knowledge or information of a person who withholds the same' from the representative of the deceased, or who refuses to impart knowledge or information he may have concerning the same, or to disclose any other fact which will aid such executor or administrator in making discovery of such property, so that it cannot be inventoried or appraised. It is for the purpose of procuring information as to the property that should be inventoried and appraised, as well as of the property that should be delivered to the administrator, that the proceeding is allowed, and an examination of a person having knowledge of the decedent's property is allowed so as to give information as to such property which the administrator here is required to inventory or appraise, although its present situation is such that it would be impracticable to order its delivery to the administrator. * * * The petition to be presented to the court must allege facts tending to show that money or other property which should be delivered to the petitioner, or included in an inventory or appraisal, is in the possession, under the control, or within the knowledge or information of a person who withholds the same from him, or refuses to impart knowledge or information he may have concerning the same, or to disclose any other fact which would aid such executor or administrator in making a discovery of such property, and upon presentation of that petition such a person may be cited to attend the inquiry and be examined accordingly; and I can see no reason why this statute should be confined to 'a proceeding in which the surrogate could order property in the hands of such a person delivered to the temporary administrator."

In this case (Matter of O'Brien v. Baker) the court seems to have asserted, more clearly than in any former case, the legislative intent of providing in this proceeding a remedy which should be, to some extent, inquisitorial in its character, and to have dissented from a construction of the statute made with the avowed purpose, as expressed by Surrogate Ransom, of preventing the remedy from becoming such. According to the prevailing opinion in this case, the proceeding was not intended solely as a method by which an executor or administrator might obtain possession of assets withheld; but was intended, as well, to enable an executor or administrator to obtain information in regard to such assets and the grounds upon which they were withheld and to inquire into the facts and circumstances upon which an adverse claim thereto was based, so that the executor or administrator might have some reasonable ground upon which to proceed in the performance of his duties, so far as such assets were concerned. The amendments to the statute which have been made since 1901, it seems to me, emphasize this aspect of the proceeding, and show more clearly that such was the legislative intent. The provision for answer of title or claim of special property, which was to oust the surrogate of jurisdiction to proceed further, has been modified, so that, upon the attendance of a person to whom citation is issued, he is permitted to submit an answer, duly verified, showing cause why the examination should not proceed. The surrogate may then dismiss the proceeding or direct the examination to proceed. It is, therefore, left to the discretion of surrogate, to a certain extent, whether to proceed with the examination; and it is no longer possible for the respondent, by filing such an answer as was provided for in the former statute, to oust the surrogate of jurisdiction.

A still more significant change, however, has been made in the statute by adding the provision in section 2709 that, if the witness is examined concerning any personal communication or transaction between himself and the decedent, all objection under section 829 to his testi-

mony as to the same in future litigation is waived. There could hardly be any reason for inserting this provision in the statute if the Legislature did not contemplate the examination of the respondent touching assets which he might claim to own, or in which he might claim some special property, or upon which he might claim to have some lien. Such, I am convinced, was the intention. I cannot see how any harm should arise therefrom to the respondent. His rights are, it seems to me, adequately protected by this provision. If his right to the property which he had in his possession depends upon any personal transaction between himself and the decedent, the executor will interrogate him in reference thereto at his peril; for, if he does so, the respondent's mouth will be opened and he will be permitted thereafter to testify in his own favor as to such transaction and in support of his claim.

I am convinced, therefore, that, whatever the Legislature may have intended by the act of 1870, the provisions, as they now stand, are intended to afford the executor or administrator a remedy which is, as I have said, in a certain sense, and to a certain degree, inquisitorial, and one that is not likely to do any harm, but, on the contrary, one that is likely to be of great service to executors and administrators in performing duties that the law casts upon them and which often place them in a position of great difficulty and hazard.

The objection of the respondent that the petition is indefinite does not strike me as having much force. This very proceeding is intended to remove indefiniteness and uncertainty in respect to things that are unknown to the executor or administrator, and to give the representative an opportunity to find out, with certainty and definiteness, about things as to which he lacks information. These things are more likely to be in the knowledge of the respondent; and, perhaps, as a result of the examination, the petitioner in this proceeding will obtain the information which the respondent now possesses and can then tell in what bank the moneys he refers to were deposited.

Nor am I able to accept the theory of the respondent's counsel as to the meaning of the word "witness" as employed in section 2710, nor to subscribe to the proposition that the provisions of this section for ending the proceeding will be satisfied if the respondent files an answer admitting that he has control of the property and alleging that the facts as to petitioner's right are in dispute. A simple reading of these sections in their consecutive order will exhibit the fact that, until the proceeding progresses to the point where the respondent is sworn and actually becomes a witness, in the ordinary meaning of the word, he is not so denominated. He is spoken of as "a person who withholds the same" or "the person complained of," or "the person to be cited," or "the party cited," but he is never called a "witness" until that part of the proceeding is reached at which the statute contemplates his having been sworn as a witness. It seems to me, therefore, that the statute contemplates the respondent as having been sworn and as having been examined, and that a dispute has been developed by such examination in regard to the facts as to the petitioner's right to the moneys or property, in relation to which discovery is sought. This means something more, it seems to me, than the mere statement of a conclusion on the part of the witness, that the property is his, or that he has a right to its

custody. It is the facts out of which his right to maintain such a claim arises, and not the mere fact that he makes it, which ends the proceeding; and those facts, I apprehend, are the facts brought out upon the examination contemplated by the statute.

Let an order be entered, therefore, denying the motion to dismiss the proceeding and directing the examination of the respondent to proceed on the 3rd day of January, 1906, to which time the proceeding is now adjourned.

Decreed accordingly.