(52 Misc. Rep. 26)

## BACHMAN v. HARRINGTON.

(Supreme Court, Special Term, Monroe County. November, 1906.)

1. ASSOCIATIONS—TRIAL OF MEMBER.

Where a member, accused of violating the constitution and by-laws of a private organization, calls attention to the adoption of a new constitution and by-laws, and the revocation and repeal of the old one, he raises an objection to the power of the association to convict him under the by-laws that were repealed.

2. SAME—ADOPTION OF NEW CONSTITUTION—EFFECT.

By the adoption by an unincorporated voluntary association of a new constitution and by-laws, covering the same grounds as the former ones and intended as a substitute for the same, the earlier constitution and by-laws are thereby repealed, and the penalties imposed by them fall where they are omitted from the new constitution.

3. SAME—EXPULSION OF MEMBER—REVIEW BY COURT.

Where a member of an unincorporated voluntary association is expelled therefrom, and the rules of the association provide for no appeal from the decisions of its own tribunal convicting its members of violating its constitution and by-laws, a member may bring an action to review the proceedings and to annul his expulsion.

Action by Max Bachman against Charles H. Harrington, president of the Rochester Musicians' Protective Association, to have his expulsion from such association declared void. Judgment for plaintiff.

O'Brien & O'Brien, for plaintiff.

George D. Forsyth, for defendant.

DUNWELL, J. The association is an unincorporated voluntary association. Its membership is composed of professional musicians residing in the city of Rochester and in the territory embraced within a radius of 10 miles from that city. The purpose of the association is to unite the instrumental portion of the musical profession within those limits for the protection of its interests in general and for the establishment of a minimum rate of prices to be charged by members for their services and for the enforcement of good faith and fair dealing between its members. Among other benefits of membership is a provision for the payment of $200 to the family of a member who is in good standing in the association at the time of his death. The association has a membership of about 400.

Membership in the association is very important and valuable to a musician residing in Rochester, for if he is not a member he will be excluded from working in his profession with musicians who are members and thus deprived of many opportunities of employment, and if expelled from the Rochester association that fact will prevent his becoming a member of a like local association elsewhere, inasmuch as the Rochester association is a branch of the American Federation of Musicians, having extensive governing powers over numerous other branches in all parts of the country, and which enforces a rule upon all local branches prohibiting membership and the privileges of membership therein, unless the musician seeking membership or employment in a new territory is in good standing in the local branch whence he came. The Rochester association, of which the plaintiff became

a member, has a constitution and by-laws which set forth with much particularity the rights, privileges, and duties of its members, the list of prices for services, and the penalties for violation of the obligations on the part of the members, particularly for rendering services for less than the price list, or in any manner evading the price list.

Charges against members under the constitution and by-laws are made triable by the executive committee, consisting of three members, elected annually, associated with the president, vice president, secretary, and treasurer. On the 10th of February, 1905, Al. Franklin, a. member, preferred formal charges in writing to the executive committee, accusing the plaintiff of having, on March 25, 1904, offered to furnish an orchestra of musicians to play at the Baker Theater for less than the scale of union prices, and with having in fact, on May 2d, and about the month of August, 1904, furnished an orchestra to play music at less than the union prices, "in violation of section 14, article 13, of the by-laws." The plaintiff was notified of the charges and appeared before the executive committee personally and by counsel. A trial took place, and the plaintiff was convicted upon two of the charges by the committee, who decided that he should be fined $25 for the first offense and $50 for the second—$75 in all. At the next regular meeting of the association the report of the committee was affirmed; and at a later meeting, the fine not having been paid, the plaintiff was expelled. The plaintiff, at the trial, asserted that his contract with the theater company called for "union prices," and it did in terms; but the theater manager swore to the prices paid by him, $110 per week, which were at least $5 less than the rate of the price list. The plaintiff did not deny that he received $110 per week.

The only clause of section 14, article 13, under which the amount of fine imposed could have been imposed reads as follows:

"Leaders found guilty of playing in theaters, opera houses, musées. etc., under the price list shall be fined for the first offense $25; for the second $50; and for the third erasion."

It will be observed that, although the charge was for furnishing an orchestra for less than union prices, the punishment imposed was for a leader found guilty of playing in a theater for less than the price list. There was no direct evidence given before the committee that the plaintiff was a leader. Nor was it expressly stated before the committee that the plaintiff personally received less than the list price; but witnesses did say that the plaintiff, upon being questioned just after the case had been summed up and counsel for both parties had left the room, but before the session of the committee broke up, said that he paid all the performers in the orchestra in question, furnished by him, their wages according to the list prices. From this it can be deduced that the deficiency in price obtained for the orchestra fell upon the plaintiff, and in this way he as a leader received less than the list price.

This variance between the charge and the finding could not be upheld in a court of law, and it verges closely upon fatal error here. The plaintiff was charged with one dereliction, and found guilty of another to which a different and higher punishment is attached. But much is

conceded to the decisions of tribunals constituted to serve the purposes of a private organization and composed of men without professional legal training, if it appears that such decisions are not oppressive and are just and fair. Here, although there is no direct evidence that the plaintiff was acting as a leader when he was found guilty of an offense as such, yet it may well be that the fact was so well understood that formal proof of it was overlooked; and it may safely be assumed that the committee would not have acted upon such an assumption of fact if it had not been brought to their knowledge. The plaintiff and committee were fellow members of the association, and it may well be supposed that the committee had personal knowledge of the special work members were doing who held engagements for weeks at a time at so public a place as the Baker Theater. Besides, the members of the committee may have understood that the musician who furnishes the orchestra is a leader. The committee is not confined by any of the rules constituting it to sworn testimony only. But, of course, plaintiff has a right to know all that is produced against him that is material, so that he may have the opportunity of answering it.

On the trial of this action before the court it appeared that plaintiff was in fact a leader. The objection is that the record of what took place before the committee contains no evidence that he was. Nor does counsel for plaintiff now assert that plaintiff was not a leader. Again, although the charge does not in terms allege dereliction as a leader, as has been shown, the evidence did tend to show that the plaintiff charged less for his services than the list price for a leader, and upon that evidence the committee so found. The ground of error, if any, consists in the variance between the charge and the finding. But it does not appear that the plaintiff was surprised. The same evidence that was produced to prove the charge included the wrong of which the plaintiff was found guilty. The same evidence he would produce to answer the charge as made would exonerate him from the wrong of which he was found guilty. The conclusion, therefore, is that the alleged error deprived plaintiff of no substantial right, and was harmless in fact, and, in view of the consideration that is conceded to such tribunals, may be disregarded.

But a more serious question is presented, involving the very foundation of the case that was prosecuted against the plaintiff before the committee. It is alleged in the complaint, and is conceded by the answer that the plaintiff was prosecuted for a violation of section 14, article 13, of the by-laws of 1904. Of course, he must have been prosecuted for an offense against the by-laws that were in existence at the time the offense was committed. These were the by-laws of 1904. On November 13, 1904, at the annual meeting of the association, a new constitution and by-laws were adopted for 1905, to take effect January 1, 1905. On the trial it was conceded that the constitution and by-laws of 1905 superseded the constitution and by-laws of 1904. The defendant's counsel concedes in his brief submitted on this trial that the constitution and by-laws for 1905 "took effect January 1, 1905." There was never any express repeal of the constitution and by-laws of 1904; but it remains to be considered if there was a repeal of the constitution and by-laws of 1904, by implication of law,

from the time the constitution and by-laws of 1905 went into effect.
By examination of the two it will be discovered that they cover the
same ground, embrace the same subjects, and were intended for the
same purpose.   Obviously that of 1905 was intended as a substitute
for that of 1904.   At the trial it was "conceded that the constitution
and by-laws of 1905 superseded the constitution and by-laws of 1904."
Important differences exist in the provisions of the two sets of by-
laws.   In those of 1905 no distinct penalties exist for the punishment
of the offenses of leaders, such as existed under section 14, article
13, of the by-laws of 1904, with the violation of which the plaintiff
was charged and convicted.   The provision of the by-laws of 1905,
for the punishment of violations thereof, is general in its character and
covers any and all offenses.   It reads as follows:

"Sec. 38. Any member who shall violate any of the provisions of this con-
stitution and by-laws, rules and regulations of the association, shall be sub-
ject to a fine, suspension or expulsion."

The by-laws of 1904 stated fixed penalties for the punishment of
leaders, while those of 1905 left the penalties in the discretion of the
committee or association.   Under the by-laws of 1904 the penalties
for plaintiff's offense were fixed by the by-laws at $75.   Under those
of 1905 it might have been $5, or any greater or less sum, in the dis-
cretion of his judges.   It is conceived that there can be no controversy
over what the law is in respect to a statute that is enacted to take the
place of one that preceded it, where the later enactment was intended
to cover, and in fact does cover, the whole subject-matter of the previ-
ous statute, and is a substitute for it, and was intended to supersede
it.   The authorities are numerous, but it will only be necessary to refer
to some of the most recent which are decisive of the question.   A re-
cent writer, Mr. Black, in his work on the Interpretation of Laws
(page 116), referring to the authorities, discusses the subject as
follows:

"Even where there is no direct repugnancy or inconsistency between the
earlier and the later law, there may be in some cases an implied repeal.   This
result follows where the later act revises, amends, and sums up the whole law
on the particular subject to which it relates, covering all the ground treated
of in the earlier statute, and adding new or different provisions, and thus
plainly shows that it was intended to supersede any and all prior enactments
on that subject-matter, and to furnish, for the future, in itself alone, the
whole and only system of statute law applicable to that subject."

"Every statute," says the court in New Jersey, "must be considered
according to what appears to have been the intention of the Legislature,
and, even though two statutes relating to the same subject be not, in
terms, repugnant or inconsistent, if the later statute is clearly intended
to prescribe the only rule which should govern the case provided for,
it will be construed as repealing the original act.   The rule does not
rest strictly upon the ground of appeal by implication, but upon the
principle that when the Legislature makes a revision of a particular
statute, and frames a new statute upon the subject-matter, and from
the framework of the act it is apparent that the Legislature designed
a complete scheme for this matter, it is a legislative declaration that
whatever is embraced in the new law shall prevail, and whatever is

excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory."

In Matter of the New York Inst., 121 N. Y. 234, 24 N. E. 378, the authorities on the subject are reviewed by the Court of Appeals. The headnote of the case correctly states the rule held by the court in that case, as follows:

"Where a revising statute covers the whole subject-matter of antecedent statutes, and such plainly appears to have been the legislative intent, it is to be deemed to contain the entire law upon the subject, and it virtually repeals the former enactments, although there is no express provision to that effect, and although provisions of the former acts are omitted in the revising statute. Where two statutes relate to the same subject-matter, though not in terms repugnant and inconsistent, if the later is intended to prescribe the only rule which shall govern, it repeals the earlier."

If the enactments of this association are to be interpreted in analogy to the interpretation of the courts of kindred enactments by the Legislature, it would seem that the going into effect of the by-laws of 1905 on the 1st of January of that year operated as a repeal of the by-laws of 1904. Why should not the interpretation of the enactments of such associations as this be governed by the same principles adopted by the courts in the interpretation of statutes? The by-laws are the sole guide for the government of the conduct of the members in their relations to the association. The by-laws prescribe known rules, for the infraction of which known penalties are prescribed. The members, by joining the association, agree to be governed by the existing by-laws and submit to their burdens. They are the written laws, for the violation of which penalties are prescribed and punishments may be inflicted. They are, within their limitations, penal laws as much as are the public statutes. Under them punishments may be inflicted quite as severe, and in some material respects even more so, in their ultimate consequences, than the public statutes of a penal nature. Why, then, should not the individual upon principles of justice be entitled to as fair and benign an interpretation of the enactments of his association and their effect upon each other as the citizen of the state receives in the legal interpretation of the public statutes of his state?

Proceeding upon this principle, what was the effect of the repeal of the by-laws of 1904? This question again is answered by having recourse to the decision of the courts in analogous cases. In Hartung v. People, 22 N. Y. 95, the effect of the repeal, expressed or implied, of a statute in respect to offenses committed before the repeal, was fully considered and numerous authorities reviewed. Upon the authority of the precedents cited the Court of Appeals held:

"The repeal of a law imposing a penalty, though it takes place after conviction, arrests the judgment; and when the repeal is after judgment, the judgment is to be reversed upon writ of error."

The court cites Hale's Pleas of the Crown, where it is said:

"When an offense is made treason or felony by an act of Parliament, and then the act is repealed, the offenses committed before such repeal and the proceedings thereupon are discharged by such repeal, and cannot be proceeded on after such repeal, unless a special clause in the act of repeal be made, enabling such proceedings, after the repeal, for offenses committed before the repeal."

The court further say:

"The law, as stated by Hale, has been steadily adhered to in England and in this country."

In the course of their opinion the court quote from the opinion of Chief Justice Marshall, in one of two cases in admiralty, where judgments of forfeiture had been pronounced in the court of original jurisdiction before the repeal of the statutes which gave the forfeiture, and the judgments were reversed, on account of such repeal, by the Supreme Court of the United States. In one of the cases Chief Justice Marshall said:

"After the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute."

Several other cases, all to the same effect, are cited by the court.

In an earlier case, a civil case, an action of ejectment, Butler v. Palmer, 1 Hill, 324, after an exhaustive review of the cases, the court, by Cowen, J., says:

"The amount of the whole comes to this: That a repealing clause is such an express enactment as necessarily divests all inchoate rights which have arisen under the statute which it destroys. These rights are but an incident to the statute, and fall with it, unless saved by express words in the repealing clause."

To the same effect are Sturgis v. Spofford, 45 N. Y. 446; Van Dyck v. McQuade, 86 N. Y. 38.

It is objected by counsel for the defendant that the complaint does not state the repeal of the by-laws of 1904 as a ground of objection to the proceedings that led to his expulsion. It is true that plaintiff does not set forth the repeal as a distinct ground of objection, but he does expressly state that, on or about the 15th day of November, 1904:

"After the commission of said offense, but before the hearing before said executive committee, or the fine and suspension of the plaintiff, the defendant association duly and regularly adopted a new constitution and by-laws, hereafter referred to as the 'By-Laws of 1905,' and duly and regularly revoked and repealed the constitution and by-laws of 1904."

The above statement contains within itself facts raising a legal objection to the power of the association to convict the plaintiff under the repealed by-laws. Where facts are stated in a pleading entitling a party to relief, although he may not base his application for relief upon true ground, he will not be denied the relief he is legally entitled to for that reason. Emery v. Pease, 20 N. Y. 62; Wright v. Wright, 54 N. Y. 437; Wil'iams v. Slote, 70 N. Y. 601; Wetmore v. Porter, 92 N. Y. 76; Williams v. Connors, 53 App. Div. 599, 66 N. Y. Supp. 11. The by-laws of 1905 were in force when plaintiff was tried, and, so far as the procedure regulating the trial practice was concerned, they would properly govern the case. It is conceded that no appeal is provided for by the by-laws of 1905. Consequently, no appeal could be taken within the association by the plaintiff for the correction of the conviction. His only resource lies in such an action as this.

This action, therefore, is in the nature of a collateral attack upon the conviction. But such a decision may be brought in question col-

laterally if the court had no jurisdiction. The executive committee had jurisdiction of this class of cases, and of the person of the plaintiff; but, as has been shown, the by-law that was violated having been repealed, it was as if such by-law had never existed, and the penalties that had been incurred, incident to the repealed by-laws, perished with it. Hence at the time the charges were made and the trial took place there was no offense in existence, nor any punishment that had survived. Hence the committee was without authority or power over the charge. It was without jurisdiction. "Whenever there is a want of authority to hear and determine the subject-matter of the controversy, an adjudication upon the merits is a nullity, and does not estop even an assenting party." Matter of Walker, 136 N. Y. 20, 32 N. E. 633. "The official determination of the defendant as to the fact upon which his power to act depended is not conclusive, and if the fact does not exist his decision that it did does not establish jurisdiction." Beardslee v. Dolge, 143 N. Y. 160, 38 N. E. 205, 42 Am. St. Rep. 707. "A collateral attack can be made upon any judgment where there is no jurisdiction." Id.

It will be seen from the authorities referred to that plaintiff's failure to object to the jurisdiction does not preclude him in this action. In Whitney v. Thomas, 23 N. Y. 281, it was held that, although assessors have the general power to assess all land in their district, yet they "have no jurisdiction to assess except as the statute prescribes; and, unless they pursue the directions of the statute, the assessment is unauthorized and void." To the same effect is People v. Sturtevant, 9 N. Y. 263, 59 Am. Dec. 536, and cases cited.

The conclusion, then, is that plaintiff's conviction was unauthorized and a nullity; that the error was jurisdictional, and may be corrected in this action; that plaintiff must be restored or recognized as a member of the association in all respects as if said conviction had not taken place; that plaintiff is entitled to a perpetual injunction enjoining and restraining the defendant from the commission of any acts against the plaintiff in any manner intefering with him, inconsistent with his position as a member of the association in good standing. No damages were proved, and none are allowed. Plaintiff did not, at the trial, raise the question upon which he has succeeded in this court. Had it been raised there, it might have obviated this litigation. Consequently, no costs are allowed.

Ordered accordingly.