In the Matter of the Petition of KATHRYN A. NUTRIZIO, Respondent, for a Discovery of Assets of the Estate of HENRY NUTRIZIO, Deceased.

PHILIP REILLY, Appellant.

First Department, November 28, 1924.

Surrogate's Court — discovery — proceedings to discover property of intestate — person against whom proceedings were directed interposed answer setting up title and on examination testified to facts tending to establish legal title in him — said person is entitled to jury trial of question of title as of right.

Where, in the Surrogate's Court, a party has been served with an order for examination in discovery proceedings; has appeared and filed an answer setting up an issue of title; has been examined; and on such examination facts appear which should satisfy the surrogate that there is a genuine and *bona fide* issue of legal title; then the constitutional right of trial by jury exists, and the party's motion for such a jury trial should at once be granted.

APPEAL by Philip Reilly from an order of the Surrogate's Court of the county of New York, entered in the office of said surrogate on the 10th day of October, 1924, denying appellant's motion for a jury trial.

*Epstein & Brother* [*Arthur J. Brothers* of counsel], for the appellant.

*Maurice R. Roche*, for the respondent.

DOWLING, J.:

Henry Nutrizio died a resident of the county of New York on May 6, 1924. On June 9, 1924, letters of administration on his estate were granted to Kathryn A. Nutrizio his widow, by the Surrogate's Court of New York county. On August 14, 1924, said administratrix presented to the Surrogate's Court a petition in discovery proceedings, wherein it was alleged, on information and belief, that the Greenwich Bank, through its West Broadway branch, was in the possession of knowledge or information con-

cerning money or other personal property which should be delivered to the petitioner. It was averred that decedent had been a depositor in said bank, and also had a safe deposit box in the vaults of a subsidiary thereof, and that petitioner had found papers among decedent's effects indicating that he was the owner of bonds and securities, coupons on some of the bonds having been collected by the bank for three years last past.

An order was thereupon made on August 15, 1924, directing the examination of the Greenwich Bank through its West Broadway branch, by John S. Considine, manager, and J. Reilly, cashier, " to be examined accordingly concerning money or other personal property which should be delivered to said Kathryn Nutrizio, Administratrix of the Estate of Henry Nutrizio, the above named decedent; and to deliver said money or property, if in its custody or control, and that the said Greenwich Bank, through its said Branch by the above named employees also produce at the same time and place all books, records and documents showing or bearing upon all transactions had by the said Henry Nutrizio with the said Greenwich Bank through its said West Broadway Branch, more particularly all papers, books, records and documents bearing upon the account or accounts had by the said Henry Nutrizio with the said Greenwich Bank, West Broadway Branch."

On September 15, 1924, a further order was made for the examination of John Reilly and the Greenwich Bank " to attend an inquiry and to be examined accordingly, concerning money and other personal property which should be delivered to said Kathryn A. Nutrizio, [administratrix of] the above named decedent; and to deliver said money or property, if in their custody or control."

Thereafter Philip Reilly (apparently the same person named in the order as John Reilly) appeared on the return of the order of September fifteenth, and filed an answer, verified September eighteenth, wherein he set forth:

" II. The respondent denies possession of any property which belongs to the decedent or any property of the Estate, and avers that if he is in possession of any property which formerly belonged to the decedent, * * * the respondent is the owner of the title and of the right to possession thereto.

" *Wherefore*, respondent prays that the proceeding be dismissed, and demands trial by jury of the issues presented by the foregoing answer."

The surrogate thereupon directed Reilly to be sworn and to be examined under and pursuant to the order. Upon the examination Reilly testified that he was the manager of the West Broadway branch of the Greenwich Bank, located at 260 West Broadway,

New York city; that he had known the decedent for about eight years and during that time decedent had called at the bank about twice a week and occasionally Reilly called at the decedent's place of business and discussed most intimate affairs. About two months before his death the decedent called on Reilly and stated: "Reilly, as you know, I have been separated from my family for eighteen years. I am getting old and not in the best of health and if anything should happen to me, I do not want anything that I have to come into the hands of my family. I intend winding up my business. I have always thought you to be more like a son to me and if anything should happen to me, I want you to have my bonds. I do not intend leaving them in my safe deposit box, because if I do, at the time of my death, my family would get them, and I do not want them to get into the hands of my family, and as I have always treated you like a son and always thought you to be a son to me, I want you to have them. I am giving these bonds to you and they are yours and I want you to give me the income from the bonds during my life time, and after my death, both the income and bonds are yours. I want you to give some to charity, and in this connection I would like you to confer with my confessor, Father Andres."

Then decedent gave the bonds to Reilly, who called on Father Andres and told him of the foregoing facts. The bonds so turned over were as follows: $1,000, Kingdom of Norway; $3,000, National Acme Company; $3,000, Central Steel; $2,000, Republic of Chile; $1,000, Jugo-Slavia; $16,000, Serbs, Croates and Slovenes.

The trial of the proceeding was set down for October 10, 1924, before the surrogate, whereupon appellant presented his petition or affidavit, and obtained an order to show cause why an order should not be made directing that the issue of title herein be determined by a jury trial. This motion was denied by the learned surrogate upon the ground that a discovery proceeding was a proceeding in equity, and that section 206 of the Surrogate's Court Act, as in effect September 1, 1924, enlarged the jurisdiction of the Surrogate's Court so as to enable the surrogate to make any determination which a court of equity might decree; and that there was no constitutional right to a jury trial in the Surrogate's Court of issues arising in a proceeding essentially equitable in its nature.

The question presented by this appeal is whether in the Surrogate's Court, in discovery proceedings, where a party has interposed an answer setting up title in himself to the property in question, has been examined therein, and on such examination has sworn to facts which demonstrate, and should satisfy the surrogate, that a genuine and *bona fide* issue of legal title to property

exists, such party is entitled by constitutional rights to a jury trial of such issue of title. (See Const. art. 1, §§ 1, 2, 6.)

I believe that the proper rule is that laid down by Surrogate FOWLER, in *Matter of Silverman* (87 Misc. 571). He there said: " A proceeding to discover property alleged to be withheld from personal representatives is in this court a wholly statutory proceeding. It was primarily a proceeding in aid of a more correct and efficient administration of estates in this court. The history of the legislation affecting this proceeding up until the year 1905 is well, although by no means exhaustively, presented in the judgment in *Matter of Gick*, 49 Misc. Rep. 32; affd., 113 App. Div. 16. It was in that case held that a discovery was a proceeding of an inquisitorial nature. It was directed to the nature of the adverse possession and not to title. I shall not at this time attempt to review the numerous decisions of our courts on the particular limitations gradually imposed on this statutory proceeding in this court. It will suffice for present purposes to point out that the statutes giving the proceeding originally contemplated not a new equitable remedy to recover possession, but an aid in administration of estates, the better to enable the enforcement of legal rights, cognizable in forums other than those of the surrogates themselves. Until recently, when an issue of legal title arose by sworn answer (*Matter of Will of Walker*, 136 N. Y. 20, 29), or after the year 1903, when it arose in the course of the subsequent examination (*Matter of Gick*, 113 App. Div. 16; *Matter of McGee*, 63 Misc. Rep. 494), the surrogates' jurisdiction was quite at an end.   *   *   *

" I am also persuaded that where an issue of title appears on the face of the petition and answer in a discovery proceeding no right to trial by jury exists *ipso facto* at that stage of the proceeding. The state of the pleadings does not conclusively carry the right to trial by jury in this court. Here the discovery must proceed regularly, in the first instance, before the surrogate alone, and when he is satisfied, and not before, that there is a genuine and *bona fide* issue of legal title, by constitutional right heretofore triable by jury, then, and not before then, the parties have a right, in a case where they would have a constitutional right to a trial by jury in another court, to a trial by jury in the Surrogate's Court. The surrogate will, when that fact is established, in an orderly way and at a proper time to be appointed, present the issue of title to a common jury. Otherwise feigned issues might be brought surreptitiously in this court, and the regular common-law courts of the State might be deprived of their proper jurisdiction.

" A discovery proceeding still remains in this court under the present act a discovery proceeding and it must proceed as hereto-

fore up and until the moment when it is made to appear satisfactorily to the surrogate that there is a *bona fide* issue of legal title between the personal representatives and the person who is alleged to withhold the property. It is not enough to .confer a jurisdiction on this court to submit the discovery proceeding to a jury, that a question of title may arise in the course of such proceeding. It must be shown to arise."

In *Matter of Heinze* (224 N. Y. 1) Judge Cardozo said (at p. 5): "The right of an executor or administrator to compel discovery of the decedent's property is not a new one. It has a history recorded in legislation and decision. For many years the law was that in such a proceeding there could be no trial of title. If an opposing claim of title was put forward by sworn answer, the proceeding was dismissed (*Matter of Walker*, 136 N. Y. 20, 29; *Matter of Gick*, 49 Misc. Rep. 32, and cases there cited). An amendment of the statute in 1903 (L. 1903, ch. 526)* empowered the surrogate to determine whether the adverse claim had a substantial basis. Unless he found it frivolous, he left the parties to an action (*Matter of Gick*, 113 App. Div. 16, affg. 49 Misc. Rep. 32). The last amendment in 1914* permits a trial of title. If necessary, a jury may be summoned (Code Civ. Pro. § 2538).† Delivery may then be decreed as the title may be found."

It should be noted that in *Matter of Silverman* (*supra*) the application for an order for a trial by jury was temporarily denied, as the answer did not allege title in the respondent therein, nor right of the possession of the bonds in question, and, therefore, it was held not to raise an issue of title. The answer in the proceeding now under review did, as has been shown, specifically raise the issue of title.

The subsequent opinion of the same learned surrogate in *Matter of Callahan* (95 Misc. 438, 439), I do not deem as well considered as the one he rendered in *Matter of Silverman* (*supra*).

It is quite true that in its present form (as amended by chapter 100 of the Laws of 1924) section 206 of the Surrogate's Court Act purports to confer extensive equitable powers upon the surrogate in discovery proceedings. It reads as follows:

"§ 206. Trial and decree. If the person directed to appear submits an answer denying any knowledge concerning, or possession of, any property which belonged to the decedent, *or any*

---

* See Code Civ. Proc. §§ 2707–2710, as amd. by Laws of 1903, chap. 526; revised by Code Civ. Proc. §§ 2675, 2676, as amd. by Laws of 1914, chap. 443; now Surr. Ct. Act, §§ 205, 206.— [Rep.

† Amd. by Laws of 1914, chap. 443, and Laws of 1915, chap. 275; now Surr. Ct. Act, § 68.— [Rep.

*property of the estate,* or shall make default in answer, he shall be sworn to answer truly all questions put to him touching the inquiry prayed for in the petition. If it appears that the petitioner is entitled to the possession of the property, the decree shall direct delivery thereof to him, *or if the estate property shall have been diverted or disposed of the decree may direct payment of the proceeds or value of such property or may impress a trust upon said proceeds or make any determination which a court of equity might decree in following trust property or funds.* If such answer alleges title to or the right to possession of any property involved in the inquiry, the issue raised by such answer shall be heard and determined and a decree made accordingly." (The matter in italic is that added in 1924.)

But this does not destroy the basic facts that the primary purpose of the discovery proceeding is still inquisitorial *(Matter of Heinze, supra)*; that its purpose of eliciting information as to the whereabouts of decedent's property is quite distinct from the recovery of such property; and that in the present proceeding its inquisitorial nature is completely satisfied, since appellant has appeared, been examined, admitted possession of the property and claimed title thereto. This proceeding has, therefore, now become one to divest appellant of his alleged ownership of the bonds in question, to take them from his possession and to turn them over to the administratrix as assets of her estate. It is now to all intents and purposes an action in replevin, to recover possession of chattels, and that is its substance not to be altered by any incidental equitable relief granted by the statute. *(City of Syracuse v. Hogan,* 234 N. Y. 457.) The right to a trial by a common-law jury in such cases is a constitutional one.

The additional matter added to the statute in 1924, while it enlarges the power of the court, does so as incidental to the determination of the main issue of title, by providing a remedy in case the property adjudged to have belonged to the estate should have been diverted or disposed of before the proceeding was brought or determined. This meets the defect declared to exist in the law in that regard in *Matter of Callahan (supra)*.

I reach the conclusion, therefore, that where in the Surrogate's Court a party has been served with an order for examination in discovery proceedings; has appeared and filed an answer setting up an issue of title; has been examined; and on such examination facts appear which should satisfy the surrogate that there is a genuine and *bona fide* issue of legal title; then the constitutional right of trial by jury exists, and the party's motion for such a jury trial should at once be granted.

The order appealed from should, therefore, be reversed, and the motion for a jury trial granted, with ten dollars costs and disbursements in this appeal to both parties thereto, payable out of the estate, and the proceeding remitted to the surrogate for further action in accordance with this opinion.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements of this appeal to both parties payable out of the estate, and the motion for a jury trial granted, and the proceeding remitted to the surrogate for further action in accordance with opinion.